JONES v. YORK COUNTY, NEB.

Circuit Court of Appeals, Eighth Circuit.
May 14, 1928.

No. 8010.

1. Records ⬥9(13)—Failure to appoint examiners in proceedings under Torrens Act held not to affect decree in subsequent suit by person injured for indemnity (Comp. St. Neb. 1922, §§ 5695–5799).

In action against county to recover damages for alleged wrongful deprivation of plaintiff's interest in land through proceedings under Torrens Act (Comp. St. Neb. 1922, §§ 5695–

5799), failure to appoint examiner in the Torrens title proceedings did not affect court's decree, since act leaves question of necessity of appointment to registrar and permits court's consideration of all matters without reference to examiner.

2. Records ⬥9(1)—Recovery from county for damages by person wrongfully deprived of land through registration is limited to indemnity fund provided for that purpose (Comp. St. Neb. 1922, §§ 5695–5799, especially sections 5786, 5789; Const. Neb. art. 5, §§ 1, 10, 20, and art. 17, §§ 3, 7; Const. U. S. Amends. 5, 14, § 1).

Recovery against county, under Comp. St. Neb. 1922, § 5788, providing for damages to person wrongfully deprived of interest in land through registration under Torrens Act (Comp. St. Neb. 1922, §§ 5695–5799), held limited to indemnity fund provided for that purpose under sections 5786, 5787, 5789, in view of provision for payment of losses from such fund, and Const. U. S. Amends. 5, 14, § 1, on ground that county should not be made liable generally for such losses, inasmuch as act is merely optional under Comp. St. Neb. 1922, § 5798, and district judge is state officer under Const. Neb. art. 5, §§ 1, 10, 20, and article 17, §§ 3, 7.

3. Constitutional law ⬥81—Police power of state authorizes expenditures only where promotion of general public interest is involved.

Legislature, in exercise of police power, may make regulations conducible to public interest; but expenditures are not justified under police power, unless intended to promote the general public welfare.

4. Statutes ⬥205—Meaning of section of statute must be determined from entire scope and purpose of legislation.

In the absence of specific, definite, and unambiguous terms, the meaning of a section of a statute must be determined, not from isolated words and phrases, but from the entire scope of the legislation.

5. Records ⬥9(13)—Decree of district court in proceedings under Torrens Act is not subject to collateral attack (Comp. St. Neb. 1922, §§ 5695–5799, especially sections 5709, 5719, 5720).

Decree of the district court in proceedings under Torrens Act (Comp. St. Neb. 1922, §§ 5695–5799) is binding and conclusive under section 5720, and is not subject to collateral attack in view of sections 5709, 5719.

6. Records ⬥9(13)—Married woman, of age at time of registration proceedings, who was served with process, held bound by decree (Comp. St. Neb. 1922, §§ 1509, 1510, 5695–5799, especially sections 5709, 5720, and sections 8529, 8530).

Married woman, who was of age at time of registration of land under Torrens Act (Comp. St. Neb. 1922, §§ 5695–5799), and was served with process, held bound by court's decree in registration proceedings, in view of sections 5709 and 5720, since a married woman under the laws of Nebraska has all powers of a feme sole with respect to her separate property under sections 1509, 1510, and may sue under sections 8529, 8530.

**7. Records ⬅⬆9(1)—Infant, wrongfully deprived of interest in land in registration proceedings, held entitled to recover indemnity from county to extent of indemnity fund (Comp. St. Neb. 1922, §§ 5695–5799, especially sections 5720, 5786–5789).**

One claiming to have been wrongfully deprived of interest in land under Comp. St. Neb. 1922, § 5788, by reason of decree of registration in proceedings under the Torrens Act (Comp. St. Neb. 1922, §§ 5695–5799), and who was an infant at the time of the registration proceedings, though bound by the decree, was under section 5720 nevertheless entitled to indemnity to the extent of the indemnity fund created under sections 5786–5789, by contributions from the persons seeking registration, since such recovery did not constitute a collateral attack on the decree; recovery against the county being limited, however, to extent of indemnity fund.

**8. Records ⬅⬆9(1)—Person wrongfully deprived of interest in land by registration proceedings held entitled to recover judgment against county, to be satisfied from indemnity fund, without pleading and proving county's possession of fund (Comp. St. Neb. 1922, §§ 5695–5799, especially sections 5786–5789).**

Person wrongfully deprived of land by registration proceedings under the Torrens Act (Comp. St. Neb. 1922, §§ 5695–5799), instituted at time of plaintiff's infancy, was entitled to recover judgment against county under section 5788 for indemnity, without pleading and proving possession of indemnity fund by county derived from registration of titles, since existence of fund was presumed from terms of act and sections 5786, 5787, 5789, though judgment was special and conditioned to be satisfied from the fund.

In Error to the District Court of the United States for the District of Nebraska; Thomas C. Munger, Judge.

Action by Mary L. Jones against York County, Nebraska. From a judgment of dismissal, plaintiff brings error. Reversed and remanded.

M. V. Beghtol, of Lincoln, Neb. (C. F. Reavis and I. S. Wagner, both of Lincoln, Neb., on the brief), for plaintiff in error.

W. L. Kirkpatrick and C. F. Stroman, both of York, Neb. (John L. Riddell, of York, Neb., on the brief), for defendant in error.

Before KENYON and VAN VALKENBURGH, Circuit Judges, and JOHN B. SANBORN, District Judge.

VAN VALKENBURGH, Circuit Judge. November 24, 1899, John A. Boon, of Seward county, Nebraska, died seized in fee simple of the southwest quarter (SW¼) of section 24, township 2, range 1, in York county, Nebraska. By his will, duly admitted to probate on the 6th day of January, 1900, and since that date in full force and effect, there was devised to Hannah Boon, wife of decedent, a life estate in the land above described. By further provisions the testator devised to Hattie Jones, his daughter, a life estate therein, to commence upon the death or remarriage of said Hannah Boon, with the further provision that upon the termination of said life estate of Hattie Jones said real estate should descend to her children as tenants in common.

The sole and only children born to Hattie Jones, all of whom are still living, are John J. Jones, Clarence Jones, Stella R. Jones Lauer, Nellie E. Jones, and plaintiff in error, hereinafter called plaintiff, Mary L. Jones. It is agreed that these constitute the only issue concerned with the remainder devised. On or about March 31, 1916, said Hattie Jones and husband conveyed by warranty deed all their right, title, and interest in and to the real estate above described to the said Hannah Boon. April 15, 1916, Hannah Boon, being then unmarried, conveyed the same real estate to Hattie Jones, reserving to herself a life interest therein. February 24, 1927, the said Hattie Jones and husband, and the said Hannah Boon, unmarried, conveyed all of their right, title, and interest in said real estate to the plaintiff, Mary L. Jones.

July 11, 1916, Hattie Jones filed in the district court of York county, Nebraska, a petition and application to register the title to said real estate in her name, as the owner in fee simple, subject to a life interest in Hannah Boon. Thereafter proceedings were regularly had under chapter 225 of the Session Acts of Nebraska for 1915, known as the Torrens Act, with the result that on the 26th day of June, 1917, the title to said land was registered in the name of Hattie Jones, subject only to the life estate of Hannah Boon, free from the claims of all other persons. It is found by the court, and conceded, that all interested persons were duly served with summons or received the constructive notice provided by statute. April 1, 1921, Hattie Jones mortgaged said real estate to the First Trust Company of Seward, Neb., for the sum of $14,000. This mortgage was subsequently assigned to Josephine Hamilton, who foreclosed the mortgage and purchased the same at judicial sale on the 15th day of November, 1926, and thereupon went into possession of the land and is now the owner thereof.

February 26, 1927, plaintiff filed her petition in the District Court of the United States for the District of Nebraska, against

the County of York, defendant in error, hereinafter designated as defendant. In this petition the facts hereinabove set out and found by the court were recited. It was alleged that on the 11th day of July, 1916, the date when the application for registration was filed, of the children and heirs of Hattie Jones, Stella R. Lauer was 22 years of age, Clarence Jones was 19 years of age, John J. Jones was 16 years of age, Nellie E. Jones 11 years of age, and Mary L. Jones, the plaintiff, was 13 years of age; that by decree of the district court of York county the ownership of said real estate in Hattie Jones was conclusively established under the provisions of the Torrens Act, and that the children of Hattie Jones and all other persons were forever concluded from making or asserting any claim to said land; that this situation was brought about as the result of a conspiracy between Hannah Boon, Hattie Jones, and one Wallace N. Boon, a brother of Hattie Jones, to cheat and defraud the children of Hattie Jones aforesaid, and "to so execute conveyances and institute actions as to make it appear that the said children of Hattie Jones had no right, title, or interest, contingent or otherwise, in and to said real estate, for the purpose of obtaining the fee-simple title to said land, free from the claims of the children of Hattie Jones aforesaid."

It was further alleged that in said registration proceeding "no examiner of titles was appointed by the court, but that the court considered all matters of title at the hearing of said application and acted in the capacity of examiner, and that as such examiner said court made an omission, mistake, and misfeasance in this, to wit, that said court acting as examiner found that the conveyance by Hattie Jones to Hannah Boon destroyed the reversionary interest of the children of Hattie Jones, when in truth and in fact under the laws of the state of Nebraska, then and now in force, said conveyance would not have such effect, and did not in any way divest the children of Hattie Jones of said interest; that through the bringing of said real estate under the provisions of the Torrens Act said children of Hattie Jones were wrongfully deprived of said land and of an interest therein in this manner; that if said application had not been made, and if said land had not been brought under the provisions of said Torrens Act, then the children of Hattie Jones under the laws of the state of Nebraska could have commenced actions in the courts of Nebraska for possession of said real estate, and could have recovered therein, notwithstanding the fraudulent scheme and claims of Hannah Boon and Hattie Jones, but that under the provisions of said Torrens Act said children have no right or recourse of any nature against said land, nor any right to commence or maintain an action for its possession; that by said registration said children of Hattie Jones have been wrongfully deprived of said land and an interest therein by the registration of Hattie Jones as owner thereof, when in truth and in fact, Hattie Jones was not at said time or any other time the owner of said real estate."

It is further recited that on the 24th day of February, 1927, her brothers and sisters transferred and assigned to plaintiff all their right and title to their cause of action for damages by reason of the premises; that they are barred by the provisions of the Torrens Act from bringing an action for the recovery of said land or interest therein. Plaintiff further asks damages against the defendant, York county, in the sum of $75,-000. The foregoing recital contains all the allegations of the petition essential to the determination of the case.

By its answer defendant pleaded the decree of the district court of York county in quieting the title to said land as conclusive of the ownership of said real estate as against the plaintiff and all other interested parties; that in so far as the sections of the Torrens Act may be construed to give a right of action against York county for damages sustained by reason of the registration of titles, and to provide for a general allowance of claims and judgment against said county, they are in contravention of the Constitution of the state of Nebraska, and of article 5 and of section 1 of article 14 of the Amendments to the Constitution of the United States, in that, so construed, they provide for the taking of private property for private use and without due process of law, and in that they deny to all persons the equal protection of the laws. The answer further pleads that plaintiff's right of recovery, if any ever existed, is contingent upon the survivorship of the heirs of Hattie Jones; that both Hannah Boon and Hattie Jones are still living; that the action is therefore prematurely brought in any event; and that plaintiff's damages, if any, will remain indefinite and uncertain until the happening of such contingency.

A jury was waived in writing, and, after hearing, the court made findings of fact substantially as hereinabove set forth. It entered judgment dismissing plaintiff's suit. The facts as found by the court are undisput-

26 F.(2d)—40

ed. The only errors assigned are to the following conclusions of law announced:

"(1) The plaintiff's suit could not be sustained under any circumstances, unless it was pleaded and proved that there was a fund in the possession of York county which had been derived from registration of titles, as provided in chapter 225 of the Session Laws of Nebraska for 1915.

"(2) So far as sections 94 and 95 and other sections of chapter 225 of the Session Laws of Nebraska for 1915 attempt to make a county liable for payment of a judgment in an action brought under sections 26 and 94 of this chapter, other than a liability to the extent of the indemnity or assurance fund in the possession of the county, acquired under the provisions of this chapter, the act is in contravention of the Constitution of Nebraska and of the Fourteenth Amendment of the Constitution of the United States.

"(3) Because of the failure of allegations and proof of the possession of any fund by York county, derived from registration of titles under the provisions of chapter 225 of the Session Laws of Nebraska for 1915, the plaintiff's suit must be ordered dismissed, and this conclusion makes it unnecessary to consider other questions which have been argued."

The Torrens Act is now embodied in sections 5695 to 5799, inclusive, of the Compiled Statutes of Nebraska of 1922. Section 5788, under which this action is brought, reads as follows:

"*Liability of Registrar for Loss or Damage.* Any person sustaining loss or damage through any omission, mistake or misfeasance of the registrar or of any examiner of titles, or of any deputy or clerk of the registrar in the performance of their respective duties under the provisions of this act, and any person wrongfully deprived of any land or any interest therein, through the bringing of the same under the provisions of this act, or by the registration of any other person as owner of such land, or by any mistake, omission or misdescription in any certificate, or in any entry or memorandum in the register book, or by any cancellation, and who by the provisions of this act is barred or in any way precluded from bringing an action for the recovery of such land or interest therein or claim upon the same shall have a right of action for the damages thus sustained against the county in which such land shall be registered, and may file a claim with the county board, or bring an action at law against the county in which said land is situated for the recovery of such damages."

Section 5786 provides that, upon the bringing of land under the operation of the act, the applicant shall pay to the registrar, who is the register of deeds of the county, one-tenth of 1 per cent. of the value of the land.

Section 5787 provides that all sums of money so received shall be paid by the registrar to the county treasurer of the county in which the land is situated for the purpose of an indemnity fund under the terms of the act.

Section 5789, following section 5788, is in the following language:

"*Indemnity Fund.* Said indemnity fund shall be held to satisfy judgments obtained or claims allowed against the county for losses or damages as aforesaid. Such claims for damages may be presented to the county board, and such county boards are hereby authorized and empowered to allow or reject the same in accordance with such practice as may be by them adopted, and to provide for the payment of such claims as may be allowed. The rejection of any claim so presented shall be no bar to the bringing of suit for the same in any court of competent jurisdiction. No claims for such losses or damages shall be allowed and paid by any such county board unless upon the recommendation of the registrar who shall be in' office at the time said claim shall be allowed. Upon the rendition of a judgment by a court of competent jurisdiction upon such claim, or upon the allowing of such claim by the county board, payment thereof shall only be made upon the order of such county board. Until the indemnity fund provided as aforesaid shall have been exhausted, payment for any such losses or damages shall be made out of such fund."

Section 5709 provides that the application for registration shall be made to the district court in the county where the land is situated; that such court shall have power to inquire into the condition of the title to and any interest in the land, and to make all such orders, judgments, and decrees as may be necessary to determine, establish and declare the title or interest legal or equitable against all persons known or unknown. Upon issues joined the court may find and decree in whom the title to or any interest in the land is vested, may remove clouds upon the title, and in general may make all such orders and decrees as shall be according to equity in the premises.

Section 5720 provides that the order or decree so made and entered shall, except as otherwise provided, be forever binding and

conclusive upon all persons. "It shall not be an exception to such conclusiveness that the person is an infant, lunatic or is under any disability, but such person may have recourse upon the indemnity fund hereinafter provided for, for any loss he may suffer by reason of being so concluded." An appeal is allowed upon like terms as in other cases in chancery. A writ of error may be sued out of the Supreme Court within two years after the entry of the order or decree, and not afterwards.

From the decree entered in the district court of York county no appeal was taken, and its conclusiveness is conceded. Plaintiff bases her right to recovery upon the provisions in section 5788, that any person wrongfully deprived of any land or any interest therein through the bringing of the same under the provisions of the Torrens Act, and who, by the provisions of that act, is barred or precluded from bringing an action for the recovery of such land or interest therein, shall have a right of action for the damages thus sustained against the county in which such land shall be registered, and may either file a claim with the county board, or bring an action directly against the county for the recovery of such damages. She claims that this provision entitles her to a general judgment against the county, to be satisfied, if necessary, by a general tax levy. The trial court, in its construction of the act, limits any recovery of this nature to the indemnity fund provided. Because of the failure of allegations and proof of the possession of any fund by the defendant county derived from registration of titles under the provisions of the act, it deemed it unnecessary to consider other questions presented, and ordered the suit dismissed.

[1] No proof was offered of the conspiracy charged, nor of fraud perpetrated upon the district court of York county. The decree of that court is accepted as conclusive. No appeal was taken from it, nor were any of the various reopening provisions of the act invoked. Plaintiff in error limits her challenge to the grounds stated in her assignments. The complaint that no examiners were appointed by the registrar is likewise abandoned, as it must needs be, because the necessity of their appointment is addressed to the judgment of the registrar in the first instance, and, by the terms of the act, the court may, in its discretion, refer the application to such examiners, if appointed, or may itself consider all matters at the hearing, without reference to any examiner. There is no evidence that this discretion was abused. The court in no case would be bound by the report of the examiner. It conducted a full and complete judicial hearing, and no possible prejudice could result from the fact that no examiner was appointed. Such is the view of the Supreme Court of Nebraska. Drake v. Frazer, 105 Neb. 162, 179 N. W. 393, 11 A. L. R. 766.

The assignments of error are mainly directed to the ruling of the trial court that the liability of the county is limited to the indemnity or assurance fund provided by the act. In this ruling we think the court was right. Section 5787 provides that all sums of money received from the entry of certificates shall be paid to the county treasurer for the purpose of an indemnity fund. Section 5789 provides that "said indemnity fund shall be held to satisfy judgments obtained or claims allowed against the county for losses or damages" permitted to be recovered under section 5788, upon which plaintiff bases her action. Section 5720, which makes the decree of the state district court conclusive upon all persons, limits infants, lunatics, or those laboring under disability to recourse to this indemnity fund for any loss suffered by being thus concluded. Section 5789 provides that, "until the indemnity fund provided as aforesaid shall have been exhausted, payment for any such losses or damages [described in section 5788] shall be made out of such fund." Plaintiff claims that the word "until" indicates the legislative purpose to restrict recovery to the fund only so long as it remains unexhausted; that thereafter satisfaction of the judgment against the county may be enforced by a tax levy. The trial court construed the language to mean "payments are to be made from the fund until it is exhausted, and thereafter no payments are to be made until the fund is enlarged."

[2, 3] It must be confessed that the wording of this clause of section 5789 is somewhat ambiguous, but we think the evident purpose of the act, as gleaned from the sections quoted, sustains the construction of the trial court. It was evidently intended to limit recovery to the indemnity fund provided by the act; otherwise, the language used in this and previous sections would appear superfluous and meaningless.

There is another persuasive reason, as held by the learned trial judge, why the people of the county should not be held to respond to a general tax levy. It is to be found in the prohibitions of the state and federal Constitutions against the taking of private property for private use and without due

process. Beyond question the Legislature, in exercise of the police power, may preserve and promote the general welfare, by prohibiting all things hurtful to the comfort, safety, and welfare of society, and may establish such rules and regulations for the conduct of *all* persons and the use and management of all property as may be conducive to the public interest. State v. Drayton, 82 Neb. 254, 117 N. W. 768, 23 L. R. A. (N. S.) 1287, 130 Am. St. Rep. 671; Atlantic Coast Line v. Goldsboro, 232 U. S. 548, 34 S. Ct. 364, 58 L. Ed. 721; Chicago & A. R. Co. v. Tranbarger, 238 U. S. 67, 35 S. Ct. 678, 59 L. Ed. 1204. The limitation upon the exercise of this power is thus well stated by the Supreme Court of Massachusetts in Lowell v. Boston, 111 Mass. 454, 15 Am. Rep. 39:

"To justify any exercise of the power requires that the expenditure which it is intended to meet shall be for some public service, or some object which concerns the public welfare. The promotion of the interests of individuals, either in respect of property or business, although it may result incidentally in the advancement of the public welfare, is, in its essential character, a private and not a public object. However certain and great the resulting good to the general public, it does not, by reason of its comparative importance, cease to be incidental. The incidental advantage to the public, or to the state, which results from the promotion of private interests, and the prosperity of private enterprises or business, does not justify their aid by the use of public money raised by taxation, or for which taxation may become necessary. It is the essential character of the direct object of the expenditure which must determine its validity, as justifying a tax, and not the magnitude of the interests to be affected, nor the degree to which the general advantage of the community, and thus the public welfare, may be ultimately benefited by their promotion."

And in Citizens' Savings & Loan Ass'n v. Topeka, 20 Wall. 655, 22 L. Ed. 455, it is held that taxation is limited to the objects for which government is established, and "cannot, therefore, be exercised in aid of enterprises strictly private, for the benefit of individuals, though in a remote or collateral way the local public may be benefited thereby." In the body of the opinion this language is used: "And in deciding whether, in the given case, the object for which the taxes are assessed falls upon the one side or the other of this line, they must be governed mainly by the course and usage of the gov-ernment, the objects for which taxes have been customarily and by long course of legislation levied, what objects or purposes have been considered necessary to the support and for the proper use of the government, whether state or municipal."

It is conceded that it is not easy to draw the line, and that the application of the rule must be determined by the facts of the individual case. The trial judge points out that the liability sought to be imposed upon the county "is not because of any wrongful act or negligence of the county or of its officers, nor because of any benefit or gain to the county. The district judge is not an officer of the county, but of the state. His office is created by the state. He is elected by a judicial district, or appointed by the Governor, and his salary is paid by the state. Const. Neb. art. 5, §§ 1, 10, 20; article 17, §§ 3, 7." The act of 1915, authorizing the use of the Torrens system of land registration (Comp. St. Neb. 1922, §§ 5695–5799), is neither mandatory nor all-embracing. It does not undertake to supplant the registry laws then and now existing, nor to impose the system upon all lands of the state wherever situated. The application to bring the land under the provisions of the act is optional with the owner of any estate or interest therein, whether legal or equitable. Any registered owner may at any time withdraw his land from the operation of the act by surrendering his certificate, duly indorsed. Such withdrawal shall not alter nor affect any title or right pertaining to or fixed upon the land at the time of withdrawal. Section 5798. The operation of the act is, therefore, not general, and a tax levy to reimburse those who have suffered loss thereby would fall upon any who have not assumed liability for such potential losses. The legislative action falls short of an exercise of the police power for the common welfare of all the people. The county, as such, has made no affirmative acceptance of the system. Certain of its officers are made ex officio administrators of the provisions of the act when invoked by application. Through them the county may perhaps suffer liability for acts of omission, mistake, or misfeasance. In such case it would seem that recourse should be limited to the indemnity fund expressly provided, and created by contributions from those who have elected to avail themselves of the system.

[4] The "wrong" by which plaintiff claims to have been deprived of her interest in the land in question necessarily inheres in the decision of the district court of York county

which adjudged the title in fee to be vested in her mother, Hattie Jones. All other grounds for recovery defined in section 5788 are either unclaimed, abandoned, or unproved. This leads to a consideration of the effect to be given to the decree of the York county district court by which the title was determined. The trial judge in his memorandum opinion suggests that the language of section 5788 "is broad enough to include the wrongful deprivation of land by means of a decree of court." The language referred to is "wrongfully deprived of any land or any interest therein, through the bringing of the same under the provisions of this act." In the absence of specific, definite and unambiguous terms, the meaning of this section must be determined, not from isolated words and phrases, but from the entire scope and purpose of the legislation. It will be noted that the title of this section is "Liability of Registrar for Loss or Damage." With the exception of the very general language above quoted, and upon which plaintiff relies, the entire section specifically defines only clerical and ministerial acts of commission or omission as grounds for recovery against the county. The entire act makes most careful and complete provision for service upon interested parties, resident and nonresident, appropriate to actions in rem, for the joinder of issues, and for full hearing. The power and authority of the court are thus defined in section 5719:

"*Findings of Title of Fee Interest.* The court may, in any proceeding under this act, find and decree in whom the title to or any interest in the land is vested, whether in the applicant or in any other person, and remove clouds upon the title, and also whether the same is subject to any lien or incumbrance, estate, trust or interest, and declare the same, and may order the registrar of titles to register such title or interest, and in case the same is subject to any lien, incumbrance, estate, trust or interest, give directions as to the manner and order in which the same shall appear upon the certificate of title to be issued by the registrar, and generally may make any and all such orders and decrees as shall be according to equity in the premises and as shall be in conformity to the principles of this act."

Repeated declarations as to the finality and conclusiveness of the court's decree, and periods of limitation for contest, reopening, and modification are found in the various sections. Provision is made for appeals or writs of error to the Supreme Court of the state. In short all the requirements of due process and all the proceedings which give finality to decrees of courts of equity are studiously insured and provided. In Drake v. Frazer, 105 Neb. 162–166, 179 N. W. 393, 11 A. L. R. 766, it is stated that this statute is virtually taken from that of Illinois, and that the conclusiveness of decrees thereunder have been carefully considered and sustained in opinions in that and other states, citing People ex rel. Deneen v. Simon, 176 Ill. 165, 52 N. E. 910, 44 L. R. A. 801, 68 Am. St. Rep. 175; White v. Ainsworth, 62 Colo. 513, 163 P. 959, Ann. Cas. 1918E, 179; Robinson v. Kerrigan, 151 Cal. 40, 90 P. 129, 121 Am. St. Rep. 90, 12 Ann. Cas. 829; Tyler v. Court of Registration, 175 Mass. 71, 55 N. E. 812, 51 L. R. A. 433; and State v. Westfall, 85 Minn. 437, 89 N. W. 175, 57 L. R. A. 297, 89 Am. St. Rep. 571. In People v. Simon, supra, the Supreme Court of Illinois held that the provision that vested rights in real property shall be adjudicated in a court of competent jurisdiction, in order that the true state of the title may be ascertained and declared, constitutes the taking of property by due process.

[5] The district court of York county, Nebraska, is a court of competent and plenary jurisdiction. It sat in this case as a court of equity, to find and decree in whom the title was vested, and generally to "make any and all such orders and decrees as shall be according to equity in the premises." Its decrees cannot be collaterally assailed. As said by the Supreme Court of Nebraska: "Whether or not the trial court, in the registration proceeding, rightfully held that the contingent remainders were destroyed by a failure of the particular estate to support them (see note, Ann. Cas. 1917A, 902), it is unnecessary to determine, for this is not an appeal from but a collateral attack upon that judgment." Drake v. Frazer, 105 Neb. 162, 164, 179 N. W. 393, 394 (11 A. L. R. 766). Compare State v. Guilbert, 56 Ohio St. 575, 47 N. E. 551, 38 L. R. A. 519–527, 60 Am. St. Rep. 756.

It is evident that this act and others contain loose 'expressions, of the nature of that under consideration, through importation from other countries in which the system originated, where no system of registration previously existed, or where the conserving influences of Constitutions are not enjoyed. State v. Guilbert, supra. Mr. Niblack, in his work on the Torrens System, points out that, according to the general trend of foreign acts, an application for registration is referred by the registrar to an examiner. If the examiner finds the title good in the ap-

plicant, he recommends that it be so registered. When the registrar registers and certifies the title in conformity with this recommendation, he vests it in the applicant by governmental authority. Such a registration does not have the sanctity of a judgment or decree of court. In such case a person wrongfully deprived of land is entitled to broad remedies, which, however, are uniformly limited to the indemnity fund provided. Niblack, § 193.

"In this country such a proceeding for bringing land under the system is not consonant with our system of government, and a proceeding in court to establish and register a title is necessary. If this proceeding is not conducted with due process of law against a person interested in the land, the decree in it does not deprive him of his interest; if it is so conducted, he is bound by the finding and decree of the court. In a technical and legal sense it is impossible for anyone to be wrongfully deprived of any interest in land by a decree of court. But in some of the acts in this country 'a person wrongfully deprived of land by the bringing of the same under the provisions of this act' is among those who may have compensation from the indemnity fund. This designation of a person who may be a beneficiary of the fund seems to be meaningless as applied to registration of title under our laws, and it was doubtless copied from foreign acts into some of our statutes without due consideration." Niblack, § 194.

Apart from the express provisions of the Torrens Act, the district court of York county was authorized by the general statutes of the state to determine and quiet titles to real estate. Under existing law its decrees cannot be set aside, except by the procedure established for that purpose. It had jurisdiction of the parties and the subject-matter. If its decision was wrong, it cannot be corrected by collateral attack, nor by any proceeding tantamount thereto. York county would undoubtedly be protected against any general judgment. By the provisions of section 5720 the order or decree of the state district court shall "be forever binding and conclusive upon all persons, whether mentioned by name in the petition or included in 'all whom it may concern.'"

[6, 7] We conclude that the recovery of plaintiff, if any, must be restricted to the indemnity fund in any event. It remains to be considered whether, in the case before us, any recovery may be permitted. Under the law, as we construe it, Stella R. Lauer is concluded by the decree. She was of age when the land was brought under the system. Both she and her husband were duly served with process and made default. Under the laws of Nebraska a married woman has all the powers of a feme sole with respect to her separate property (sections 1509, 1510, Comp. St. 1922), and may sue and be sued in the same manner as if she were unmarried (sections 8529, 8530). The plaintiff and her brothers and remaining sister were infants. By section 5720 of the act it is expressly provided that "it shall not be an exception to such conclusiveness that the person is an infant, * * * but such person may have recourse upon the indemnity fund hereinafter provided for, for any loss he may suffer by reason of being so concluded." This preserves the integrity of the decree with respect to the rights of all parties affected thereby, but it accords to infants the privilege of recourse to the indemnity fund, if they have been "wrongfully deprived of any land or any interest therein, through the bringing of the same under the provisions of this act."

The Legislature evidently recognized the possibility of wrong to infants through proceedings of this nature, and, as said by the learned trial judge in his memorandum opinion, the language used "is certainly broad enough to include the wrongful deprivation of land by means of a decree of court." That provision in the Nebraska act differs from that of any which have been brought to our attention. We do not feel at liberty to disregard a reservation thus expressly and deliberately made, nor are we so inclined. It is obvious that a recovery restricted to the indemnity fund, created by contributions from those seeking registration under the act, constitutes no attack upon the decree. The rights of parties acquired under, or recognized by, that decree are not disturbed. Mutual considerations, arising from the provisions of the act, exist between contributors to the fund. All others are unaffected. The action or proceeding for compensation must be taken or brought within 10 years from the time when the right accrues. The plaintiff and her coheirs were deprived of their interest in the land, if at all, by the registration in fee in Hattie Jones. This suit was brought within the statutory period. Jurisdiction of the parties was correctly assumed.

[8] We cannot agree with the trial court that the plaintiff is precluded by failure to plead and prove the possession of a fund by York county derived from registration of titles. The existence of such a fund may be presumed from the terms of the act. The statute expressly gives a cause of action against

the county. This is made necessary by the fact that the money received from registration is paid to the county treasurer, and, upon the rendition of a judgment, payment, responsive to that judgment, is made upon order of the county board. Of course, from what we have said, the judgment is a special one, conditioned to be satisfied from the indemnity fund. Whether the county has money available for that purpose concerns the matter of collection, but does not affect the right to judgment.

The merits of plaintiff's case were not considered by the trial court, nor presented in argument and brief. Upon them, therefore, we express no opinion. It results that the judgment of dismissal is reversed, and the case remanded for further proceedings in accordance with this opinion.

It is so ordered.