## JONES v. YORK COUNTY, NEB., et al.
### No. 8955.

Circuit Court of Appeals, Eighth Circuit.
March 4, 1931.

Maxwell V. Beghtol, of Lincoln, Neb., for appellant.

Paul F. Good, of Lincoln, Neb., and George M. Spurlock, of York, Neb. (W. L. Kirkpatrick, John E. Dougherty, and Charles E. Sandall, all of York, Neb., and R. S. Norval, of Seward, Neb., on the brief), for appellees.

Before KENYON and GARDNER, Circuit Judges.

GARDNER, Circuit Judge.

The earlier chapters of this litigation will be found recorded in the exhaustive opinion of Judge Van Valkenburg in Jones v. York County (C. C. A.) 26 F. (2d) 623. Following that decision, appellant here, who was plaintiff below, recovered judgment against York county, Neb., for $19,890.25, the judgment containing provision that no execution should issue thereon, but that it should be payable only out of the indemnity fund provided for by the Nebraska statutes referred to as the Torrens Act (Comp. St. Neb. 1922, §§ 5695–5799). There was, however, only $182.17 in this indemnity fund, so that it was impossible to make any substantial collection under the judgment. Plaintiff then filed this ancillary suit, seeking equitable relief against the owners and mortgagees of the land which had been registered under the act, joining York county, its treasurer, and its register of deeds with the other defendants, and asking that the withdrawals of the lands of certain of the defendants be canceled and set aside; that the lands be reinstated in the Torrens system; that the other named owners of registered land be perpetually enjoined from withdrawing, or attempting to withdraw, their lands, until the payment of plaintiff's judgment; and that the mortgagee defendant be likewise enjoined from attempting to withdraw said lands. The suit seems to have been submitted on the pleadings which present the single question as to whether the owners of land brought under this act may, notwithstanding plaintiff's unpaid judgment, withdraw their lands, or, as stated by counsel for appellant: "Does plaintiff, who has a judgment against York County, payable from the indemnity fund, have the right to prevent the owners of registered lands from withdrawing the lands, and thus escape contribution to the fund which would go to the payment of plaintiff's judgment?"

The scope of our inquiry has been greatly curtailed by the former opinion of this court in Jones v. York County, supra. It was there held that plaintiff was not entitled to a general judgment against the county, but that if entitled to recover at all, her judgment must be a special one, conditioned to be satisfied from the indemnity fund. As the constitutionality of the statute has been sustained and the plaintiff's limited right of recovery determined, it remains only to consider what rights under these statutes have been acquired and may be asserted by plaintiff under her judgment. It may be observed in passing that while many questions have arisen under similar acts within the last quarter of a

century and have been passed upon by various courts, most of these cases have arisen in proceedings for original registration, and few of them pass directly upon matters subsequent to registration of title.

The Torrens Act is embodied in the Compiled Statutes of Nebraska for 1922 (sections 5695 to 5799, inclusive), and it will be necessary again to refer to certain of these statutes. Those having a bearing on the present issue are as follows:

"§ 5740. The bringing of land under this act shall imply an agreement which shall run with the land that the same shall be subject to the terms of the act and all amendments and alterations thereof. And all dealings with land or any estate or interest therein, after the same has been brought under this act, and all liens, encumbrances and charges upon the same subsequent to the first registration thereof, shall be deemed to be subject to the terms of this act."

"§ 5786. Fees for registering land. Upon the first bringing of land under the operation of this act consequent upon the application of the owner, as hereinbefore provided and upon the issuance of a certificate of title pursuant of section 76 (5770), and also upon the entry of a new certificate showing some one either by devise or by descent as registered owner, there shall be paid to the registrar one-tenth of one per cent of the value of such land. Such value shall be ascertained by the registrar."

"§ 5787. All sums of money received as aforesaid shall be paid by the registrar to the county treasurer of the county in which the land is situated, for the purpose of an indemnity fund under the terms of this act. It shall be the duty of the treasurer to invest all said funds, principal and income, in his hands from time to time if not immediately required for payments of indemnities in the manner herein provided, and report annually to the county court the condition and income thereof. All investments of the fund or any part thereof shall be made with the approval of said court by order entered of record. The said fund shall be invested only in the bonds or securities of the United States, or of this state, or counties or other municipalities of this state."

"§ 5798. Any registered land owner may at any time withdraw his land from the operation of this act by surrendering to the registrar his duplicate certificate endorsed with such request, executed in like manner as a deed, whereupon such registrar shall certify thereon that such land has been so withdrawn

from the operation of this act and shall cause said certificate with all notations, certifications, memorials and endorsements to be recorded in the office of the register of deeds of the proper county in like manner as now provided for recording deeds. The fee for such withdrawal and record of certificate shall be five dollars. Such withdrawal shall not alter or affect any title or right pertaining to or fixed upon such land at the time of such withdrawal."

As adopted in Nebraska, there was no requirement in the act compelling any landowner to bring his lands under the provision of the act, so that all the landowners who are parties to this suit, or their predecessors, have exercised an option given them to come under the act, and hence they have accepted and are bound by all its constitutional provisions. As said by the Supreme Court of the United States in Eliason v. Wilborn, 281 U. S. 457, 50 S. Ct. 382, 383, 74 L. Ed. 962:

"Even if they had been the original holders under the Torrens Act and had attempted to save their supposed rights by protest the answer would be that they were under no compulsion when they came into the system, that an elaborate plan was offered of which the provisions objected to were an important part, and that they could take it as it was or let it alone."

On this appeal, no one is seriously questioning the constitutionality of the act; in fact, both parties are asserting rights under it, and the question presented is one of interpretation or construction. Not only should the act be given effect as a whole, but effect should be given to each of its expressed provisions, and hence all the language of the act must be considered. It is a recognized rule of construction or interpretation that the legislative intent is to be deduced from a view of the whole and every part of the statute taken and compared together, and, if possible, this act should be so construed as to render it a consistent and harmonious whole, and that construction should be favored which will render every provision operative, rather than one which would make some of its provisions idle or nugatory.

Section 5798, supra, provides that any registered landowner may at any time withdraw his land from the operation of the act. The only specific limitation upon this right, so far as the words of the statute are concerned, is that "such withdrawal shall not alter or affect any title or right pertaining to or fixed upon such land at the time of such withdrawal." This provision, if its words are to be accepted as expressive of thought, is too plain to require interpretation. The title of the land at the time of its withdrawal is to remain adjudicated, and any right pertaining to or fixed upon it at that time by reason of its having been under the act is to remain unaltered as fixed at the time of withdrawal. It is observed that this provision refers only to the land withdrawn, and it refers only to rights and titles, and makes no mention of any liability. This section confers the absolute right of withdrawal. It is, however, the contention of appellant that in view of the provision creating the indemnity fund, a construction of this provision of the statute as granting an absolute right of withdrawal, notwithstanding the fact that an unsatisfied judgment is held by appellant, would render the statute unconstitutional. This would seem to be based upon the assumption that without the indemnity provision of the act, it would be unconstitutional. As construed by the Supreme Court of Nebraska, a decree of registration entered under the provisions of this act is a decree of a court of competent jurisdiction. The court had jurisdiction of the parties and the subject-matter, and the decree was valid, even though it may have been erroneous. In other words, the rights of the appellant have been cut off by a decree of court. A provision for compensating a person who may have been deprived of property rights by a valid, though erroneous, judgment, is certainly exceptional, and such a provision was not essential to the constitutionality of this act. Drake v. Fraser, 105 Neb. 162, 179 N. W. 393, 11 A. L. R. 766; Jones v. York County (C. C. A.) 26 F.(2d) 623, 630; Ashton-Jenkins Co. v. Bramel, 56 Utah, 587, 192 P. 375, 11 A. L. R. 752; Eliason v. Wilborn, 281 U. S. 457, 50 S. Ct. 382, 74 L. Ed. 962.

This court in Jones v. York County, supra, quoting from Niblack, said:

" 'If this proceeding is not conducted with due process of law against a person interested in the land, the decree in it does not deprive him of his interest; if it is so conducted, he is bound by the finding and decree of the court. In a technical and legal sense it is impossible for anyone to be wrongfully deprived of any interest in land by a decree of court. But in some of the acts in this country "a person wrongfully deprived of land by the bringing of the same under the provisions of this act" is among those who may have compensation from the indemnity fund. This designation of a person who may be a beneficiary of the fund seems to be meaningless as applied to registration of title under our

laws, and it was doubtless copied from foreign acts into some of our statutes without due consideration.' Niblack, § 194.

"Apart from the express provisions of the Torrens Act, the district court of York county was authorized by the general statutes of the state to determine and quiet titles to real estate. Under existing law its decrees cannot be set aside, except by the procedure established for that purpose. It had jurisdiction of the parties and the subject-matter. If its decision was wrong, it cannot be corrected by collateral attack, nor by any proceeding tantamount thereto."

The provision in the act for an indemnity fund is, therefore, in the nature of a gratuity, and such provision not being essential to the constitutionality of the act, there would seem to be no judicial excuse or reason for not giving full effect to the plain provisions of the statute, permitting a withdrawal of the lands. The withdrawal provision is not in the nature of an amendment sought to be ingrafted on the law after the lands in question were brought under it, but it was a part of the law when plaintiff's predecessors brought these lands under its provisions, and by so doing all its terms and conditions were accepted and were binding upon the plaintiff.

So long as the lands remain registered, they are subject to the act, but section 5798 allows the owner to withdraw them. The argument that plaintiff's judgment amounts to a title or right pertaining to or fixed upon plaintiff's land finds no support either in the plain provisions of the act, or in reason. The statute says nothing with reference to any obligation being fixed upon the land, but refers only to title or right. This is not a right vested in appellant's land, nor is it an obligation fixed upon the lands of appellees, and to sustain the contention of appellant would require judicial legislation, imposing reservations and conditions not found in the plain provisions of the statute. The liability of registered land to contribute to the indemnity fund is not a right "pertaining to or fixed upon the land," but the owners of this land discharged all their obligations to this indemnity fund when they paid the registry fee. The only liability of the land for charges is that created by the statute. Referring to section 5786, supra, it will be noted that the indemnity fund is created and maintained by fees in the amount of one-tenth of one per cent. of the value of the land, payable on three possible different occasions, to wit: (1) Upon the first bringing of the land under the operation of the act; (2) upon the issuance of a new certificate of title when a tax deed is issued; (3) upon the transfer of title by devise or descent. These fees are payable only upon the issuance of a certificate of title. So far as the land of the defendants is concerned, none of it can ever again be liable for the registration fee chargeable on first bringing the land under the operation of the act. That fee has already been paid. In each of the other two provisions for the payment of fees, the fee is only payable upon the issuance of a certificate of title, or upon the entry of a new certificate. Unless the owners of these registered lands further invoke the provisions of this act, the land will not be liable for any further contributions to the indemnity fund. Even though a tax deed issued, the holder of the deed might not invoke the provisions of the act, and unless he did so the land would not be subject to the payment of the fees provided; neither would the land be subject to the payment of further fees upon the death of the owner of the land, unless the heir or devisee should elect to invoke the provisions of the act and have the title recorded and a new certificate issued. In other words, it is entirely optional whether the owner of land elects to have it registered or not, but if he elects to have it registered, as a condition precedent to his right so to do, he must pay the registration fee. Thereafter, the mere fact that the land is registered subjects it to no further charges, and in order to give rise to any further charge or obligation, the provisions of the act for a further registration must be invoked. The machinery of the act does not sua sponte operate upon the land, nor fix any charges thereon. True, if tax deed issue, or if the land pass by descent or devise, the title subsequent to that registered will not be under the provisions of the act, unless the holder of the title thus acquired registers it, but that is one of the provisions of the law creating this voluntary association. Even a denial of the right of the defendants to withdraw their lands would, therefore, not augment the indemnity fund, and to grant the prayer of the plaintiff's petition would be to deny rights of the defendants clearly conferred upon them by the provisions of the act. In the instant case the indemnity provision is so inadequate for its declared purpose as to make its name inappropriate, but that is a defect in the legislation which cannot be remedied by the courts.

We conclude that the judgment of the lower court should be, and is, affirmed.