McKinney, J.,
delivered the opinion of the Conrt.
This was a bill for the specific execution of a contract for the purchase of a lot of ground in the town of Memphis. The bill was dismissed on the hearing, and the complainants appealed to this Court.
The complainants are the heirs at law of John Whitby, who died intestate in Shelby county in 1848; and the defendants are the children and heirs at law of his brother, Richardson Whitby, who likewise died intestate in said county in 1853.
On the 31st day of October, 1836, Richardson Whitby executed and delivered to John Whitby a bond for title to the lot in controversy, of which the following is a copy:
“Know all whom it may concern, that I, Richardson Whitby, of the State of Tennessee, Shelby county, for and in consideration of the sum of - received, do obligate myself to make to John Whitby, of said State and county, a full right and title to a certain lot of ground situated in said State and county, near the town of Memphis, and bounded as follows: beginning at the north-west corner of the country lot known by the No. 496, on the *475 north side of the Nonconner road, where formerly stood a poplar marked X.; running thence (magnetic course) south, fifty degrees east, twenty-five rods, thence north, forty degrees east, twenty-seven rods, intersecting the -eastern boundary line of lot 496; thence north, forty-five degrees west, seventeen rods and seven-twentyfifths to an iron wood, being the north-east corner of lot 496; thence south, fifty-five degrees west, twenty-nine rods to the beginning. Containing three and three-fourth acres. Now be it known that I bind myself, my heirs, etc., in the sum of four thousand dollars, to make when called for, a full title to the above-described lot of ground to John Whitby or his legal representatives, and on failure of which the above-named sum shall be forfeited to his benefit.
“As witness my hand this 31st day of October, 1836.
Soon after the execution of the title-bond, John Whitby entered into possession of the lot, and retained the same until his death, a period of more than six years. No deed was ever made to him for the lot. After the death of John, Richardson took out letters of administration on his estate; and finding said title-bond among the papers of the deceased, he took the same and voluntarily acknowledged its execution by himself, before the clerk of the County Court, and caused it to be registered; and up to the time of his death he uniformly represented and treated said lot as the exclusive property of John Whitby during his life, and as the property of his heirs after his death, and never pretended any claim to the same, on the *476 ground of the purchase-money being unpaid or otherwise. And, in addition to this, some time before his death, he purchased and took transfers from several of the heirs at law of John Whitby of their respective interests in said lot, derived by descent from him.
There is no other proof in the record in relation to the payment of any consideration for the lot by John to Richardson Whitby, except what appears upon the face of the title-bond, and the admission of the latter, proved by one witness, to the effect that he had been paid for said lot. The bill in general terms alleges the payment of the consideration, without stating what it was, or how or when paid; and the answer denies this allegation.
A specific execution of the contract is resisted on two grounds: first, that the title-bond is not of itself a sufficient writing, under the statute of frauds and perjuries; and, secondly, that the transaction was in fact a gift, without consideration, and not a sale of the lot; and, therefore, the complainants, being volunteers, cannot enforce a specific execution of the contract.
The first objection rests upon the ground that the title-bond does not disclose what the consideration was, or the amount. It is assumed that the note or memorandum of an agreement for the sale of lands must express the consideration as well as the agreement itself, and that the omission to state the consideration cannot be supplied by oral evidence of its existence.
We are not aware that it has ever been held, upon the construction of our act of 1801, that the consideration must be stated in the writing. There is no controversy upon the point as to the necessity of a consideration having in fact been given, in order to the legal validity of an ex- *477 ecutory contract for the purchase of land: that is not the question. It is simply whether it he indispensable, upon a proper construction of the statute, that the consideration shall be stated in terms in the note or memorandum of the agreement; or whether, if the writing be in other respects sufficient, the fact of the payment of a consideration may not be proved by parol evidence.
The general principle of the common law is, that every contract not under seal requires a consideration to support it; but the consideration may be proved by parol as well as by written evidence. If the contract be under seal, a consideration is presumed. This doctrine, we suppose, applied as well to contracts in respect to lands as to personal property prior to the statute of frauds and perjuries; and to what extent has it been altered by the statute ?
The provision of the act of 1801 is, that no person shall be charged “ upon any contract for the sale of lands, tenements, or hereditaments,” unless the “agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person by him thereunto lawfully authorized.”
It is said that the terms used in the statute import a mutuality of contract and obligation between the parties. That is assuming the very point in controversy. We think the language imports just the contrary. It is not required that loth parties shall sign the writing; and if such were the intention, why was it not so expressed ? The requirement is, that it shall be signed by the party to be charged therewith. To this extent only is the common law evidence of the contract changed. We do not mean to say that the purchaser is not bound by the con *478 tract: we grant that lie is; but the obligation of the contract, on bis part, is not affected by the statute: it depends, as before, upon common law principles. The necessity of setting forth the consideration can no more be implied from the object than from the words of the statute.
It obviously was designed to protect the owners of land from being drawn into hasty or inconsiderate agreements in relation to what is deemed the more valuable and important species of property, and to. guard against misunderstanding as to the nature and extent of such agreements ; and hence the provision that the owner should not be divested of his title except by evidence in writing, signed by himself. This in substance is the letter and spii’it of the statute. The same policy dictated the enactment that the sale of slaves should be evidenced by vyriting.
We think it clear that the consideration is not to be regarded, in construing the statute, as part of the contract, but merely as inducement to it. And therefore no principle of the law is violated by the admission of parol evidence of the consideration, whenever it becomes necessary to be shown.
The attempt in some of the eases to make a distinction, founded merely on the supposed different meanings of the terms “ promise,” “ agreement,” and “ contract,” as used in the statute, is altogether too refined for practical purposes. It would seem to be absurd, by force of nice verbal distinctions, to establish different rules of evidence in respect to the several classes of cases defined in the statute, in which written evidence is made necessary to the validity of the agreement, so that in some cases the con *479 sideration must be expressed, because, as it is said, this is implied by the use of the words “ agreement ” or “ contract;” but that in other cases the consideration need not be expressed, because no such thing is to be implied from the use of the word “promise.”
We are fully aware that in England the current of modern decisions is, that the consideration as well as the agreement must be expressed. This was settled in 1804, in Wain vs. Warlters, 5 East., 10. And a few of the Courts in this country have followed that doctrine; but most of the American Courts have dissented from it, and held the proper construction to be different. See the cases referred to in Chitty on Con., (ed. of 1848,) note to p. 517; Addison on Con., p. 40, note 8. See also note to Wain vs. Warlters, in the American edition’ of East.; 1 Dev. & Batt., Law R., 103.
It is conceded that the mention of a consideration in a deed of conveyance for land, is matter of form not essential to its operation. And it is said (4 Kent’s Com., 465) to be “sufficient if the deed purports to be for money received or for value received, without mentioning the certainty of the sum; and if any sum is mentioned, the smallest in amount or value will be sufficient to raise the use.” . . . “And if the deed be brought in question, the consideration may be averred in pleading, and supported by proof.” Ibid.
It has been frequently held by this Court that, under our act of 1715, it is not necessary that any consideration should be expressed in a deed. 5 Yerg., 124; 7 Yerg., 338. Why, then, should it be held that in a covenant to convey, or bond for title, a consideration should be expressed ? When the consideration shall be brought in *480 question, and proof of its existence is requisite, in order to raise a use or equity, why may it not, as in the case of a deed, he averred in pleading and proved by oral evidence ? The reason of the requirement of the statute of frauds — that no one should be divested of his freehold without unequivocal evidence in writing of an “ agreement” to part with his title — surely does not demand such a construction. We therefore hold that it is not indispensable that the consideration should be expressed in the writing.
But, secondly, if the proposition were admitted to be correct that a consideration must be expressed in the memorandum of the contract, then, in the first place, the recital in the bond (“ for and in consideration of the sum of - received”) would be a substantial compliance with that requirement. This recital imports that a consideration was in fact received; and this we hold would be sufficient, without showing precisely what that consideration was, or the amount; and the omission might be supplied by oral evidence as to the amount. And, in the next place, the writing being under seal, the law presumes that a sufficient consideration existed.
The second ground of defence — that this was a gift without consideration, and not a sale to John Whitby — requires but little discussion. The title-bond is evidence of a sale, and there is nothing in the record to impress upon the transaction a different character. And as to the matter of fact, whether a' valuable consideration was paid, the circumstances of the case, in addition to the evidence adduced, place that question beyond reasonable doubt, if, indeed, the defendants are not precluded from raising that question, standing as they do in the shoes of Richardson *481 Whitby, and claiming as mere volunteers through him. The prominent facts as to this point are, the recital of the title-bond, which implies the payment of a valuable consideration; and this is corroborated by the penalty annexed on failure to convey on demand; that after the death of John Whitby, Richardson Whitby, the father of the defendants, being administrator, voluntarily acknowledged and placed said bond on the register’s books; that to the hour of his death he pretended no claim against his brother’s estate, although, if the purchase-money had been unpaid, he could have asserted his vendor’s lien; and, finally, purchased and paid for several interests in said lot from those who claimed the same by descent from John Whitby.
And to the irresistible conclusions arising from these circumstances, there is no opposing proof in the record entitled to any influence in the decision of the cause.
We hold,' therefore, that the . complainants are entitled to the relief sought in their bill.
The decree of the Chancellor will be reversed, and a decree will be entered, up for a specific execution of the contract.