BLACK *et al.* *v.* BLACK.

(*Knoxville*, September Term, 1946.)

Opinion filed May 31, 1947.

24

S. E. Hodges, of Knoxville, for complainants Joe W. Black *et al.*

Donaldson, Montgomery & Kennerly, of Knoxville, for defendant Tom Q. Black.

Ayers & Parkey, of Knoxville, Tenn., and Cox, Taylor, Epps & Miller, of Johnson City, for intervening petitioner Free Service Tire Co.

Mr. Justice Neil delivered the opinion of the Court.

The questions involved in this controversy relate to the validity of two contracts for the sale of a valuable lot in the City of Knoxville and which of the two claimants is entitled to have a decree against the owner for specific performance.

The original bill was filed by Joe W. Black and Jack F. Black against their brother, Tom Q. Black, in which they allege that the latter orally agreed to sell them a lot on Henley Street in Knoxville for $15,000, and that following this agreement he and his wife executed a deed to the property, but failed and refused to deliver it and subsequently undertook to sell and convey said lot to the Free Service Tire Stores for $20,500.

The defendant Tom Q. Black demurred to the bill upon a number of grounds, which was overruled by the Chancellor, and he later filed an answer, relying on the

demurrer by permission of the Court, in which contention was made that there was no written memorandum signed by the grantor (the party to be charged) so as to comply with the statute of frauds; that complainants were lacking in diligence in performing their part of the contract, and that defendant felt free to sell the lot to the Free Service Tire Stores. Defense was further made on the ground that the alleged agreement was not clear and definite.

The Free Service Tire Stores filed an intervening petition, claiming that it was the owner of the lot by purchse from the defendant; that the owner of said lot was unknown to them, and negotiations for its purchase were through a real estate agent; that a binding agreement was entered into by which they acquired the property for the sum of $20,500. They claimed to have had no knowledge of any contract between complainants and the defendant. Contention is further made by this intervenor that its equities are superior to complainants' in that the latter were grossly negligent in not securing a deed to the property.

The cause was tried by consent of counsel on oral testimony and the Chancellor found in favor of the complainants and entered a decree in their behalf for specific performance.

The defendants appealed to the Court of Appeals and that Court reversed the Chancellor, holding that the undelivered deed from Tom Q. Black and wife to complainants did not satisfy the statute and that the deed transferring the lot to the Free Service Tire Stores should be sustained, and that the equities of the Free Service Tire Stores were superior to complainants'.

The Complainants, Joe W. Black and Jack F. Black, petitioned this Court for *certiorari*, complaining chiefly of error by the Court of Appeals in holding (1) that the alleged oral agreement was not enforceable because there was no writing or memorandum evidencing the contract, and (2) because the equities of the Free Service Tire Stores were superior. The defendants also petitioned for *certiorari* upon the ground that the alleged oral contract was not clear, complete, and definite in its terms, and hence was not a binding obligation. The Court of Appeals pretermitted this question.

All writs were granted and counsel in a *per curiam* memorandum were directed to give special consideration in argument to the following questions: (1) Whether or not the oral contract for the sale of the lot in question was sufficiently clear, complete, and definite in its terms to warrant a decree for specific performance. (2) Was the preparation of the deed of trust by Tom Q. Black and a warranty deed which was executed by himself and wife, and later destroyed and not delivered, a sufficient writing or memorandum to satisfy the statute of frauds? (3) Are the equities of the Free Service Tire Stores superior to those of the complainants?

The Court granted writs of *certiorari* because of the sharp controversy between the counsel as to whether the case now before us is controlled by *Wilson* v. *Winters*, 108 Tenn. 398, 67 S. W. 800, or by *Huffine* v. *Mc-Campbell*, 149 Tenn. 47, 257 S. W. 80, and *Radiophone Broadcasting Station* v. *Imboden,* ·Tenn. ʻSup., 191 S. W. (2d) 535. The Chancellor based his decision upon the latter case, being of opinion that this Court had departed from its holding in *Wilson* v. *Winters, supra.*

The Court of Appeals held that, while the deed in the instant case did not satisfy the statute, there was ʻʻgrave

doubt'' as to whether the rule announced in *Wilson* v. *Winters* was controlling. The opinion recites, ''We hold the deed in question did not satisfy the statute, but freely concede that the cases of *Huffine* v. *McCampbell* and *Radiophone Broadcasting Station* v. *Imboden, supra, greatly impair Wilson v. Winters, supra, and cause grave doubt as to its authority in the instant case.''* (Italics ours.)

There is no real ground for dispute as to the facts bearing upon the vital issues to which we directed counsel's special attention. The complainants, Joe W. and Jack F. Black, are in the automotive supply business. They were anxious to enlarge their business and needed the lot in question, which was next door to them, and was owned by their brother Tom Q. Black. On June 16, 1945, they opened negotiations with their brother Tom to buy the lot and offered him $15,000 for it, to be paid on January 1, 1946. They agreed to execute a note for this amount and also a deed of trust on the property to secure it. The defendant accepted their proposition and on June 22, 1945, he and his wife executed a warranty deed to the complainants and left it at the office of his attorney, Cecil Meek, to be delivered to complainants when they executed the note and deed of trust.

The complainants were never informed of the execution of said deed and the drafting by him of the deed of trust which they were to sign. We think, however, that they knew or should have known that Cecil Meek was to prepare the papers referred to.

On August 12th, the defendant went to Meek's office and stated that he wanted the warranty deed and deed of trust, saying he was not going through with the deal. The papers were given to him and he then and there tore up the deed of trust and later burned the warranty deed.

■ We think there was a definite oral agreement between the parties whereby Joe and Jack Black became the purchasers of the lot for $15,000. The money was not to be paid to Tom Black until January 1, 1946, because he did not want his record to show any more profit for the year 1945. For this reason it was not desirable that there be an immediate payment of the purchase price. The complainants were ready and willing at all times to execute their note and the deed of trust to secure its payment. We are therefore constrained to hold that the oral contract was clear and definite in all of its essential terms. It is true that following the oral agreement there remained something for both parties to do, such as paying the purchase price, passing the warranty deed and the deed of trust, but there was a definite understanding when these things were to be done, to-wit, on or before January 1, 1946.

The next question for consideration involves the sufficiency of the undelivered deed and the deed of trust as a writing or memorandum to satisfy the statute of frauds, Code, section 7831. It is earnestly contended by counsel for Tom Q. Black and the Free Service Tire Stores that our holding in *Wilson* v. *Winters,* 108 Tenn. 398, 67 S. W. 800, 801, has never been departed from and that it has become a rule of property in this state. It was there held:

"But the instrument is equally ineffectual as a memorandum in writing to answer the requirements of the statute of frauds. It was intended by the parties to it as a deed, and not as a mere memorandum of a contract of sale, and, being inoperative for want of delivery, as a deed, it cannot be made to perform service as a mere memorandum. In this view the textwriters and the courts which have had occasion to rule upon this ques-

tion, with a single exception, so far as our examinaton has extended, concur.''

The queston was again considered in *Huffine* v. *McCampbell, supra,* wherein Special Justice MALONE reviewed the authorities and reached the conclusion that an undelivered deed, *which was not intended as evidencing an oral contract for the sale of land,* was not a memorandum which satisfied the statute of frauds. Thus, in *Lowther* v. *Potter* (D. C.), 197 F. 196, it was held, as pointed out by the Court [149 Tenn. 47, 257 S. W. 88], ''An undelivered deed which did not recite the existence of the contract was insufficient.'' When this decision is re-examined in the light of the cases cited, it seems clear that the holding was confined to undelivered deeds which do not purport to be evidence of an oral contract, for, as said by Judge MALONE, ''It is, indeed, probable that the case of an undelivered deed is *sui generis.''* We think the distinction is sound and should be recognized. An undelivered deed, duly executed, may not recite any of the terms of the contract. The reason for its non-delivery may be due to the fact that the parties have not reached an agreement as to title, terms, and conditions of sale. 37 C. J. S., Frauds, Statute of, sec. 173(b), p. 650. In the same volume, as sec. 180(a), p. 663, it is said:

''The memorandum required by the statute of frauds must show an existing and binding contract, as distinguished from mere negotiations, and must disclose the particular contract sought to be enforced rather than some other contract or promise.''

The case of *Radiophone Broadcasting Station* v. *Imboden, supra,* is not in conflict with the foregoing authorities. No reference is made to *Wilson* v. *Winters* because the evidence showed both a deposit of the pur-

chase money and the deed of the vendor with the escrow agent, thus completing the contract. However, the Court, in discussing the validity of the deed as a memorandum to satisfy the statute, said, at page 537 of 191 S. W. (2d):

"Many authorities hold that an undelivered deed constitutes a sufficient memorandum of the contract of sale state *that it is sufficient if the deed contains substantially the terms of a prior parol contract.* See annotation in 100 A. L. R. 205, footnote 13." (Italics ours.)

The foregoing statement, as does the opinion in *Huffine* v. *McCampbell, supra,* serves to clarify our holding in *Wilson* v. *Winters,* as follows: That, while an undelivered deed standing alone is not in and of itself sufficient to take an oral contract out of the statute, yet, if it "contains substantially the terms of a prior parol contract," it is a sufficient memorandum to satisfy the statute.

Now, if the complainants in the instant case are entitled to relief, it must appear that the oral contract relied on is evidenced by the warranty deed and the unsigned deed of trust. In other words, the writing, whether it be a deed or other memorandum, must be complete, leaving nothing to rest in parol. *War Finance Corp.* v. *Davenport,* 4 Tenn. App. 599, 606.

The deed from Tom Q. Black and wife to complainants recites the following:

"This Indenture, made this 22nd day of June, A. D. 1945, between Tom Q. Black and Katherine W. Black, of the First Part, and Joe W. Black and Jack F. Black, of the Second Part, Witnesseth:

"That the said Party of the First Part, for and in consideration of the sum of One Dollar ($1.00), etc., and the further consideration of one note for Fifteen Thousand Dollars ($15,000.00), of even date herewith, due and

payable on January 1, 1946, drawing interest at six per cent (6%) from date and providing for attorney's fees if placed in the hands of an attorney at law for collection, and to secure the payment of said note a trust deed has been executed by the Second Parties, which is to be placed of record in the Register's Office of Knox County, Tennessee, *have granted, bargained, sold, and conveyed, and do hereby grant, bargain sell and convey* unto the said Parties of the Second Part,'' etc.  (Italics ours.)

The property is here fully described, with the usual covenants of warranty as to title, etc., and signed by Tom Q. Black and Katherine W. Black.

The foregoing is admittedly a true copy of the original deed that was burned by the defendant.  There is also in the record the unsigned deed of trust referred to above, which appears to have been torn in two.  We find in these papers a complete statement covering the oral agreement between the parties.  The deed is almost a verbatim statement of the contract as testified to by both the complainants and the defendant.  It will be noticed from the italicized words that the grantors *have bargained*, etc., which clearly denotes a prior transaction, and that this instrument is carrying it into effect. The deed and also the deed of trust were written at the instance of Tom Q. Black.  There is no dispute but that he agreed to have them prepared.

Considering as we do the warranty deed and the deed of trust as being a sufficient memorandum to satisfy the statute, we next look to the authorities as to the necessity of delivery to take the contract out of the statute of frauds.  Our cases are all to the effect that delivery is not a necessary requirement.

In one of our early cases, *Neal* v. *Cox & Talbert*, 1824, 7 Tenn. 443, the Court says, ''Now, observe the statute

does not say that the writing shall be given by the person to be charged therewith to the person who seeks to enforce the contract.'' See also *Lee* v. *Cherry,* 85 Tenn. 707, 4 S. W. 835, 4 Am. St. Rep. 800; *Wright* v. *Harrison & Black,* 137 Tenn. 157, 192 S. W. 716; Pipkin v. James, 20 Tenn. 325, 327, 34 Am. Dec. 652; *Adams, Trustee,* v. *Scales,* 60 Tenn. 337, 340, 25 Am. Rep. 772; *Moore Keppel & Co.* v. *Ward,* 1912, 71 W. Va. 393, 76 S. E. 807, 43 L. R. A. (N. S.), 390, Ann. Cas. 1914C, 263.

In 100 A. L. R., at page 205, the annotator refers to numerous decisions where ''undelivered deeds have been held to constitute a sufficient memorandum of the contract of sale of real estate, frequently, at least, *on the theory that the deed contained substantially the terms of the contract* required by the statute to be in writing,'' citing cases from Virginia and North Carolina; also *Arnett* v. *Wescott,* 107 Kan. 693, 193 P. 377, and *Ames* v. *Ames,* 1910, 46 Ind. App. 597, 91 N. E. 509. (Italics ours.)

The delivery of the instrument of writing would have no more probative value in the hands of the plaintiff than if it remained in the custody of the defendant who is the party to be charged, for, as the Court said in *Drury* v. *Young,* 58 Md. 546, 42 Am. Rep. 343, and approved in *Huffine* v. *McCampbell, supra,* ''The plaintiff is the one likely to suffer by leaving the evidence of his bargain in the hands of the defendant—not the defendant himself.''

We next consider the assignment of error that the Court of Appeals erred in holding that the equities of the Free Service Tire Stores were superior to complainants'. In sustaining the intervening petition, the Court said, ''In our opinion, the equities are overwhelmingly in favor of the petitioners.'' We think the evidence fully justifies this conclusion. The complainants did noth-

ing from the time of the agreement, June 16th, until November 26th, to assert their claim. On August 12th the defendant, Tom Q. Black, notified the complainants that he would not abide by the oral agreement. During the entire time they remained silent. As said by the Court of Appeals, "They asked nothing, said nothing, did nothing." In the meantime the Free Service Tire Stores had purchased the Loptspeich lot and contracted to buy the lot adjoining, which is the one now in dispute. Complainants attempt to excuse their delay on the ground that they were dealing with their brother and not with a stranger. But this excuse is wholly without merit as against the claim of innocent third parties who were acting in the utmost good faith and who had no knowledge whatever of any agreement between these three brothers. The Free Service Tire Stores say with considerable force and effect, "Complainants, if they reposed confidence in their brother, are bound by the consequences of such confidence if such confidence was misplaced." It is further argued that this "misplaced confidence cannot be shifted to the shoulders of the intervening petitioners." We think this position is unassailable and is supported by abundant authority.

In 19 Am. Jur., Equity, sec. 484, p. 336, it is said, "If each of the parties reposed trust or confidence in the wrongdoer, the loss must be borne by the one who trusted most." Citing the following: *Eliason* v. *Wilborn*, 281 U. S. 457, 50 S. Ct. 382, 74 L. Ed. 962; *Carpenter* v. *Longan*, 16 Wall., U. S., 271, 21 L. Ed. 313; *Day* v. *Brenton* 102 Iowa 482, 71 N. W. 538, 63 Am. St. Rep. 460; *Bluefield Nat. Bank* v. *Bernard*, 109 W. Va. 459, 155 S. E. 306; and other cases.

In Gibson's Suits in Chancery (Chambliss Rev.), sec. 49, the author expresses the same equitable principle

in the following language: "It is bad faith for a party wronged to delay suit until the wrong cannot be righted without doing another wrong."

█ In applying the principle to intervening rights, it is held in many jurisdictions that "A court of equity will refuse to act where, in the course of inexcusable delay, third persons have acquired rights in the subject matter of the controversy." 30 C. J. S., Equity, sec. 118, p. 542.

Applying the foregoing sound principles of equity to the undisputed facts of the instant case, we think priority should be given to the intervening petitioners. The complainants had it within their power, by exercising only ordinary diligence, to have made it impossible for the defendant to contract for the sale of the lot in question to a third party.

█ The contention made by the complainants that the intervenors had notice of actual possession of the lot, as shown by grading, placing certain building material upon it, etc., is without merit. The lot is shown to have been covered with weeds and trash and adjoined a similar vacant lot which was bought by petitioners from one Loptspeich. The small shanty on the property was not erected by complainants, but was there when defendant Tom Q. Black bought it in 1944. The lumber and sand were in small quantities and were left following the erection of complainants' building. They made the same use of the adjoining Loptspeich lot. The principle is well settled that in order to operate as notice the possession must be accompanied by acts or works which indicate continued occupancy as distinguished from a mere intermittent or occasional use. 13 L. R. A. (N. S.), 79.

Upon the foregoing authorities and for the reasons stated, we are constrained to agree with the Court of Appeals that the rights of the intervenors, Free Service Tire Stores, are superior to complainants'.

This assignment of error is overruled and the decree of the Court of Appeals is affirmed.

All concur.