ESLICK *v.* FRIEDMAN *et al.*

(*Nashville,* December Term, 1950)

Opinion filed January 13, 1951.

648

DAY SUGG, of Fayetteville, BENNETT ESLICK and DAVID RHEA, both of Pulaski, for appellant.

LAMB & McCOWN, of Fayetteville, for appellees.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

Dave Hipsh, who was born of Jewish parents in Austria, emigrated to the United States in his early youth. He resided in Fayetteville, Tennessee, for more than forty years, during which time he and Morgan Eslick became intimate friends. Mr. Hipsh never married. He died in Fayetteville, Lincoln County, on March 18, 1947, leaving a paper writing which purported to be his last will and testament, as follows:

"Fayetteville, Tennessee

"July 8, 1946.

"According to the laws of human nature I realize that I have reached the age when the remaining days of my natural life are much more uncertain than ever before.

"I therefore think it proper at this time to make a will and have decided that I wish and direct my property disposed of as follows:

"After my lawful debts are paid.

"I give and bequeath to my sister, Gazella Berman, one-third (1/3) of the amount of money that I have on deposit in banks, also one-half (1/2) of the United States Government Bonds that I own.

"I give and bequeath to my niece, Ruth Hipsh Wodicka, one-third (1/3) of the amount of money that I have on deposit in banks, also one-half (1/2) of the United States Government Bonds that I own.

"I give and bequeath to my good friend Morgan Eslick one-third (⅓) of all the money that I have on deposit in banks.

"I also give and bequeath to Morgan Eslick all the real estate that I own in the town of Fayetteville, Tennessee (8th. Civil District of Lincoln County, Tennessee), and my farm land of about one hundred and sixty (160) acres located in the 25th. Civil District of Lincoln County, Tennessee.

"I also give and bequeath to Morgan Eslick all notes and mortgages that I own.

"I also give and bequeath to Morgan Eslick all other property that I own, except One Hundred ($100.00) Dollars which I direct to be paid to each of my other relatives not mentioned by name in this will.

"I have known Morgan Eslick for more than forty years, and I hereby appoint him to be Executor of this my last will and testament, and hereby revoke all former wills made by me.

"I also direct that the said Morgan Eslick be excused from making bond as Executor of my will, as I feel that he will faithfully comply with my wishes as directed by me in this will.

"Dave Hipsh

"G. H. Scott
C. N. Jackson."
Witnesses.

The foregoing paper writing was duly offered for probate in the county court of Lincoln County. It was later contested by the heirs and next of kin of the testator and declared to be invalid. Before passing to the consideration of the issues involved in this case it should be said that it was the duty of Morgan Eslick, as the duly

named executor, to offer it for probate and defend it as the last will of Mr. Hipsh.

Shortly after the will contest was ended Mr. Eslick filed an original bill in the chancery court against the heirs at law of Dave Hipsh and the Administrator of his estate seeking specific performance of an alleged oral contract entered into between himself and the deceased, whereby the latter agreed to will to the complainant certain real estate situated in Fayetteville, a farm in Lincoln County and personalty, which was described in the bill, as compensation for services rendered the decedent by the complainant. The property described in the bill is the same property which is mentioned in the purported will of the deceased. The bill prayed in the alternative that if complainant was not entitled to a specific performance of the alleged contract that he have and recover of the defendants, as damages for the breach of said oral contract, an amount equal in value to the real estate and personal property described in the bill.

The original bill was filed on July 19, 1949. On September 7, 1949, the defendants filed a plea to the bill alleging that the complainant was judicially estopped from making any claim against defendants because of certain testimony given by Mr. Eslick in the contested will case. Issue was joined on this plea. The testimony referred to was heard by the Chancellor who overruled the plea and denied defendants an appeal from his decision.

On December 2, 1949, the defendants filed a petition asking leave to file a plea of the Statute of Frauds to the original bill. On December 17, 1949, the complainant filed a motion to strike the petition upon several grounds which was overruled, the Chancellor being of opinion "that the plea of the Statute of Frauds would reduce

the case to a single, well-defined and determinative issue, save time and expense and would otherwise facilitate the hearing.'' The defendants thereupon filed the said plea. to which the complainant joined issue. The Chancellor sustained the plea and ordered that the original bill, insofar as it seeks specific performance and for damages for breach of the alleged oral contract, be dismissed.

Following this action of the Chancellor the complainant moved to amend his original bill by alleging that by reason of the deceased's agreement to make a will in his favor as compensation for services rendered, as set forth in the said original bill, that there was thereby created a resulting or constructive trust in all the property in his favor. The amendment was allowed. On January 28, 1950, the defendants demurred to the bill as amended because (1) ''there is no allegation of fraud, either actual or constructive, on which a resulting or constructive trust could be impressed'', and (2) ''the bill as amended shows on its face a paper writing complete in its terms and free from ambiguity and oral testimony cannot be heard as to what passed between the parties, either prior to or contemporaneous with the execution of said instrument, so as to add to, substract from or in any way vary or qualify said written instrument.''

The demurrer was sustained and an appeal prayed and granted to this Court. The assignments of error complain of the ruling of the Chancellor in sustaining the defendants' plea of the Statute of Frauds and the demurrer to the amended bill. The defendants also assigned as error the ruling of the Chancellor in overruling the plea of judicial estoppel. But consideration of this

error is pretermitted for reasons which are satisfactory to the Court.

■. There is no merit in the complainant's contention that the Chancellor erred in granting the defendants leave to file the plea of the Statute of Frauds. This issue thus raised by this special plea to the bill is the life of the case. Moreover the reason given by the learned Chancellor for his action is unassailable. Had he declined to allow the plea to be filed it would have availed complainant nothing since it could and would have been made a part of the defendants' answer to the bill. So that in no event could the question be avoided.

■ There can be no doubt that Morgan Eslick rendered the deceased, Dave Hipsh, many valuable services, especially during the latter years when Mr. Hipsh became feeble. Based upon the allegations of the bill we must concede that there was an oral contract to make a will in favor of the complainant. Accepting all of the foregoing to be true we cannot, under our authorities, conclude that the contract is *evidenced* by the paper writing which was offered for probate as the last will of Dave Hipsh, deceased. There is not so much as an intimation in the will that it was made in pursuance of any oral agreement between the parties. We find nothing in the record to take the alleged contract out of the Statute of Frauds. While the counsel for complainant has filed an exhaustive brief, citing many authorities in support of his insistence we are unable to distinguish them from our own cases which support the Chancellor's holding that the writing in question does not satisfy the Statute of Frauds.

It results that it cannot be made the basis for a bill to compel specific performance. Neither can it be made the

basis for a decree for damages for its alleged breach, or that it is sufficient to impress the property of the deceased with a resulting or constructive trust in favor of the complainant.

In *Goodloe* v. *Goodloe,* 116 Tenn. 252, 92 S. W. 767, 6 L. R. A., N S., 703, a case which is directly in point, the complainant sought specific performance of a contract to make a will in her favor, the same being based upon a parol agreement that it would be done as full consideration for services rendered. It was held: "The contract relied upon was one resting in parol, and was therefore unenforceable." The Court further held that partial performance (as in the instant case) "will not prevent the application of the statute to such contract." The only other question decided in the case was whether or not the Statute of Limitations barred the suit to recover compensation for services rendered upon a *quantum meruit* basis.

In *War Finance Corporation* v. *Davenport,* 4 Tenn. App. 599, the party complainant sought to enforce the terms of an antenuptial agreement. It was held that since it rested entirely in parol it could not be sustained. In ruling upon the question, it was said: "The antenuptial agreement was parol, and as neither the note nor the deed mentioned the antenuptial agreement or settlement, they are insufficient as a memorandum of such an agreement made in consideration of marriage. In order to satisfy the statute of frauds, the entire agreement must be in writing. It cannot be partly in writing and partly in parol. See 27 C. J., 267-9, Sections 318-319; *McCarty* v. *Kyle,* 44 Tenn. 348; *Sheid* v. *Stamps,* 34 Tenn. 172."

This holding by the Court of Appeals is in line with *Goodloe* v. *Goodloe,* supra, and is cited by us as support-

ing authority in *Black* v. *Black,* 185 Tenn. 23, 202 S. W. (2d) 659.

The question of the application of the Statute of Frauds to a parol contract to make a deed was considered in *Huffine* v. *M'Campbell,* 149 Tenn. 47, 257 S. W. 80, in which the Court reached the conclusion that an undelivered deed, which was not intended as evidencing an oral contract for the sale of land, was not a memorandum which satisfied the Statute of Frauds, citing *Lowther* v. *Potter,* D. C., 197 F. 196, and other cases. We again reviewed the identical question in *Black* v. *Black,* supra, in which we made the following statement: " 'Many authorities hold that an undelivered deed constitutes a sufficient memorandum of the contract of sale and state *that it is sufficient if the deed contains substantially the terms of a prior parol contract.* See annotation in 100 A. L. R., 205, footnote 13.' (Italics ours.)" [185 Tenn. 23, 202 S. W. (2d) 662.]

In the above case it was pointed out that the memorandum (the undelivered deed) complied with the Statute of Frauds, because "The deed was almost a verbatim statement of the contract as testified to by both the complainant and the defendant." It also referred to the prior oral agreement by use of the words "We have bargained" etc. It therefore *evidenced* the terms of the prior oral agreement.

In several cases, cited in complainant's supplemental brief, where the facts appear to be similar to the case at bar, the memorandum relied on made particular reference to the prior oral agreement. Thus in *Laune* v. *Chandless,* 99 N. J. Eq. 186, 131 A. 634, the testator said: "In consideration for services rendered in keeping house for me since the death of my wife,

without any compensation'' etc., the property was given to the complainant. There was also due recognition of part performance of the contract, which, in a number of jurisdictions, is held to take the case out of the Statute of Frauds. But in Tennessee our decisions are to the contrary.

In *Goodloe* v. *Goodloe,* supra, it was expressly held, ''that partial performance of a parol contract . . . would not relieve from the application of the statute'', and that this ruling by the Court had become so firmly established in our cases ''that it may now be regarded as a rule of property in this state.'' Moreover in *Black* v. *Black,* supra, the ruling was not confined to contracts for the sale and transfer of lands. It was there said: ''In other words, the writing, *whether it be a deed or other memorandum,* must be complete, *leaving nothing to rest in parol''*, citing *War Finance Corp.* v. *Davenport,* supra.

The cases are almost without number and are in hopeless conflict as to when a memorandum is sufficient to satisfy the Statute of Frauds, or the contract is of such a nature that the statute is not applicable. See Annotations in 106 A. L. R. 742 to *Holsz* v. *Stephen,* also 69 A. L. R. 14. We think our own cases are conclusive of the question.

■ ■ While we have not been unsympathetic with complainant's insistence, the argument of counsel leaves out of any consideration the controlling rule of law that the memorandum ''must be complete, leaving nothing to rest in parol.'' We cannot reach a conclusion favorable to the complainant because the purported will of Mr. Hipsh makes no reference to any prior parol contract. The contention that the will was executed in

compliance with a prior parol contract can only be shown by parol proof. The entire agreement rests on parol. Parol proof would not be admissible to establish his reason for executing the will in question since the writing is not in the least ambiguous. For us to hold otherwise would open the way to the impairment, if not the destruction, of wills as well as other written instruments which appear to be complete and regular on their face. Not only the rule against the admission of parol evidence tending to vary, alter or contradict the terms of a completed instrument is applicable to this case but the statute (often referred to as "the dead man's statute") would close the mouth of Mr. Eslick as to any transaction or agreement he may have had with the deceased. Code Section 9780.

It is next assigned as error that the Chancellor erred in not decreeing that the heirs and next of kin of Dave Hipsh held the property in trust for Eslick who was named as the beneficiary. This is the third alternative theory upon which complainant seeks title to and possession of the property of the deceased. It is argued on the brief of counsel for complainant: "A trust arises in favor of Morgan Eslick when it is established by parol proof that Dave Hipsh willed his certain specific property to him on an agreement that he was to have the same as compensation or remuneration for the services rendered by Morgan Eslick to Dave Hipsh." Contrary to the insistence of counsel this is not a case of rights arising from a declaration of trust; nor is it one where the intention of the alleged donor of property is defeated or thwarted by any artifice or fraud. There is no allegation of fraud in the bill or facts and circumstances from which fraud could be implied.

█ The cases of *Fehn* v. *Schlickling*, 26 Tenn. App. 608, 175 S. W. (2d) 37, and *Covert* v. *Nashville C. & St. L. Ry.*, 186 Tenn. 142, 208 S. W. (2d) 1008, 1 A. L. R. (2d) 154, relied on by complainant, have no application to the present issue. In the Fehn case a resulting trust was declared upon proof that certain money had been advanced for the purchase of property, the title being taken in the name of another. It was not a gift, nor was it a loan, but money furnished for a specific purpose. We agree to the statement of CARDOZO, J., quoted with approval in the Fehn case: ''A court of equity in decreeing a constructive trust is bound by no unyielding formula. The equity of the transaction must shape the measure of relief.'' [26 Tenn. App. 608, 175 S. W. (2d) 40.]

A casual reading of the Covert case shows that the Court was not dealing with a situation that was in any way analogous to the case at bar.

█ If there are any equities in favor of Mr. Eslick, arising from any transaction or agreement with Mr. Hipsh, it is because the former has been denied his right to reasonable compensation for services rendered. But this is not true unless it can be said that he should have the *whole property* ''in order to satisfy the demands of justice.'' *Motley's Adm'rs.* v. *Tabor*, 208 Ky. 702, 706; 271 S. W. 1064, 1065. Now no one could question the liability of the estate of Dave Hipsh on the contract in question for full compensation. Since complainant has an adequate remedy in a court of law to recover a fair and reasonable sum as compensation for services rendered he is not privileged to invoke the power of the chancery court to declare a resulting trust in the deceased's entire estate (valued at $90,000.00) upon the theory that equity and good conscience require such a declaration.

The final contention of the complainant is that the Chancellor was in error in refusing to allow a recovery for the value of services rendered on a *quantum meruit* basis, that it was proper under the prayer for "general relief". The decree of the court dismissing the bill on the demurrer recites that "there was no specific prayer seeking a recovery for the reasonable value of complainant's services on a *quantum meruit* basis."

Aside from the reasons given by the Chancellor for refusing to grant such relief under the prayer for general relief, we think the exclusive remedy afforded the complainant was in the county court. Chapter 175 of the Public Acts of 1939 requires that all persons having claims against the estate of a decedent, whether the claimant be *sui juris* or otherwise, whether due or not due, and whether the estate be solvent or otherwise, shall file them in duplicate with the Clerk of the Court in which the estate is being administered. If the claim is not so filed within the time prescribed by the Act, it is barred. It is not disputed that the estate of Hipsh was being administered in the county court; nor is there any insistence that the estate was insolvent. In Higgins "Administration of Estates in Tennessee" it is said: "It may be said that no court other than a court of probate has jurisdiction to allow and render a judgment or order for the payment of claims, excepting, of course, in insolvency proceedings." See Section 28 N, pages 35-36. *Collins v. Ruffner*, 185 Tenn. 290, 296, 206 S. W. (2d) 298. The foregoing remedy is still available to complainant provided he has not slept on his rights.

The assignments of error are overruled and the decree of the Chancellor is affirmed.

All concur.