IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
September 23, 2004 Session

## RENA MAE BLAIR v. ROLLIN C. BROWNSON, ET AL.

**Appeal from the Chancery Court for Hamblen County**
**No. 2003-187     Kindall T. Lawson, Judge**

_____

**No. E2004-00817-COA-R3-CV  - FILED FEBRUARY 22, 2005**

_____

This action for specific performance was filed following a foreclosure sale of real property.  The foreclosure was prompted by a prior purchaser's default.  Rena Mae Blair ("the plaintiff"), the holder of the first deed of trust in default, acting through her daughter and substitute trustee, Linda Caraway, advertised and conducted the foreclosure sale with the assistance of an attorney.  At the sale, the property was sold to Rollin C. Brownson and his wife, Mary Ann Brownson ("the defendants") for $77,642.05.  There was no writing at the time of the sale memorializing its terms, but Mr. Brownson did provide Ms. Caraway with an earnest money check.  Subsequent to the sale, the attorney conducting the sale drafted a deed which purports to set forth the terms of the sale.  The defendants refused to go through with the sale when they learned that the property was reputed to be worth only $50,000.  In response to the plaintiff's complaint for specific performance, the defendants raised the statute of frauds as an affirmative defense, contending that there was no written memorandum reflecting the terms of the parties' oral agreement.  Following a bench trial, the court below granted the plaintiff's request for specific performance.  The defendants appeal.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which D. MICHAEL SWINEY and SHARON G. LEE, JJ., joined.

Kelley Hinsley, Morristown, Tennessee, for the appellants, Rollin C. Brownson and wife, Mary Ann Brownson.

Lori L. Jessee, Morristown, Tennessee, for the appellee, Rena Mae Blair.

## OPINION

I.

The property is located in Morristown and consists of a lot improved with a house. The plaintiff first sold the property to Leigh Farmer, who secured her note to the plaintiff by a first deed of trust. Unbeknownst to the plaintiff, Farmer subsequently secured a loan for the purpose of remodeling the house. In so doing, she executed a second deed of trust to Household Financial Center, Inc. Household filed its second deed of trust for recordation on July 23, 1999. After doing extensive work on the property, Farmer left town in 2002, defaulting on both of her obligations. She left owing the plaintiff $74,000, whereupon the plaintiff placed a "For Sale" sign in the front yard of the house.

In July or August, 2002, the defendants saw the sign on the property and contacted Linda Caraway, the plaintiff's daughter, about purchasing it for their daughter. Since the plaintiff was elderly and had been ill, she permitted her daughter to act as her agent with respect to the property. The plaintiff was unaware of the outstanding debt to Household when the defendants first approached her daughter. However, upon learning of the second deed of trust, the plaintiff determined that a foreclosure sale would be necessary to clear the title. On August 8, 2002, the defendants gave Ms. Caraway a $500 "earnest deposit" and asked her to sign a handwritten memorandum stating that the defendants wanted to purchase the subject property "if there is a clear title and the price with legal fees after foreclosure does not exceed $75,500." The memorandum further provides that if the price exceeds that amount, the plaintiff would grant the defendants the first right of refusal. Ms. Caraway signed the memorandum as the plaintiff's agent; on August 12, 2002, she was designated as substitute trustee under the first deed of trust.

Following the parties' August 8, 2002, agreement, the defendants were granted access to the house. The plaintiff and Ms. Caraway hired attorney Herbert Bacon to conduct the foreclosure sale, which was duly advertised and scheduled for September 11, 2002. On September 11, 2002, Mr. Bacon appeared at the courthouse steps and read the notice of foreclosure as it appeared in the newspaper. That notice provides, in relevant part, that the property would be sold "to the highest bidder," and that "[i]f the highest bidder is unable to perform with the terms of the sale, the right is reserved to proceed to the next highest bidder able to comply or to re-advertise." The defendants were the only individuals to appear at the foreclosure sale. They first bid $75,500. They were advised, however, that the purchase price would have to be $77,642.05 in order to clear the title and cover the expense of conducting the sale. After stepping outside to discuss the price, the defendants returned and bid the higher amount. Mr. Bacon declared the property sold to the defendants and informed them that he would prepare the necessary papers. The defendants indicated that they were in the process of obtaining financing and would need a couple of weeks to do so. Mr. Bacon gave the defendants until the end of the month to secure the balance due on the bid. The closing was tentatively set for September 30, 2002.

On September 11, 2002, the defendants tendered a check for $7,200 to Ms. Caraway. This amount represents ten percent of the price less the $500 already paid as earnest money. On the check made payable to Ms. Caraway, Mr. Brownson wrote the following in the memo section of the check:

"Deposit for 505 Louise–contingent on getting financial [sic]." Upon handing the check to Ms. Caraway, Mr. Brownson asked whether the check was "okay." Ms. Caraway stated that it was, although she later testified that she never noticed the additional notation on the check. There were no additional writings at the time of the sale.

Following the sale, Mr. Bacon prepared a substitute trustee's deed that conveyed the property in fee simple to the defendants. Ms. Caraway signed the deed, although it was not notarized or dated.

The defendants later determined they would need more time before they could close because they had been unable to get the house appraised. Mr. Brownson offered to give Ms. Caraway an additional $15,000 because of the delay. However, Ms. Caraway did not insist upon the additional payment. Mr. Brownson indicated that the defendants would be able to close in about a week.

The house appraisal came in at $50,000. The defendants were informed that it would take between $25,000 and $35,000 to put the house in a livable condition. They were also advised that they could secure the necessary additional financing if they would use their primary residence as collateral. The defendants subsequently offered Ms. Caraway $55,000 for the home. Ms. Caraway responded that she expected the amount bid at the foreclosure sale. She also informed the defendants that the plaintiff could assist with financing by carrying a note until they completed renovations.

The defendants decided they no longer wanted the property. In making this decision, the defendants were prompted by the fact that the property was worth less than the bid amount. They were also unwilling to mortgage their own home. The plaintiff made several requests that the defendants satisfy the balance owing on their bid, but she received no response. Following the sale and through roughly November or December, the defendants worked on the house and placed electricity service in their names. In January 2003, however, they terminated this service.

The plaintiff brought this action for specific performance on April 11, 2003. In their answer filed August 20, 2003, the defendants raised the statute of frauds as an affirmative defense.[1] In particular, the defendants averred that no writing or memorandum was ever executed by the parties, and since the transaction was for the sale of land, the agreement was unenforceable. A bench trial was held on January 28, 2004. At its conclusion, the trial court rendered its decision from the bench and orally awarded judgment to the plaintiff. By written judgment entered March 3, 2004, the trial court granted the plaintiff's complaint for specific performance and ordered the plaintiff to deliver

---

[1]The defendants raised two additional affirmative defenses: (1) estoppel, because the plaintiff allegedly entered into negotiations with third parties after the foreclosure sale to rent the property, thereby evidencing an intent to disavow the foreclosure and the existence of a contract, and (2) failure of consideration due to the disparity between the value of the disputed property and the bid price. However, the real issue on appeal is the applicability of the defense of the statute of frauds.

the property in exchange for the balance of the agreed purchase price, which amounted to $69,942.05.[2]  It is from this order that the defendants appeal.

## II.

The defendants contend that the trial court erred when it found that the deed signed only by Ms. Caraway sufficed to satisfy the statute of frauds.  In particular, the defendants argue that the deed did not accurately recite the terms of the parties' oral agreement arising out of the foreclosure sale. The defendants further contend that the notation on the check indicating that the sale was contingent upon the defendants obtaining financing constituted a counteroffer, which, when not accepted, was withdrawn by the new offer of $55,000.

The issue before us is whether the deed, which was drafted after the foreclosure sale and signed only by Ms. Caraway, suffices to satisfy the statute of frauds.  As we find that the deed contained the terms of the oral agreement entered into at the foreclosure sale, we affirm the trial court's holding that the contract is enforceable against the defendants.[3]

## III.

When an appeal is pursued from a bench trial, our review of the trial's court findings of fact is *de novo* upon the record.  Tenn. R. App. P. 13(d).  We accord these findings a presumption of correction unless the evidence preponderates against them.  **Id.**  As to the trial court's conclusions of law, however, there is no such presumption of correctness.  **Ganzevoort v. Russell**, 949 S.W.2d 293, 296 (Tenn. 1997).  The issue before us concerns whether the statute of frauds precludes enforcement of the oral agreement entered into at the foreclosure sale.  Whether a memorandum is sufficient to satisfy the statute of frauds is a question of law.  *See* **Massey v. Hardcastle**, 753 S.W.2d 127, 140 (Tenn. Ct. App. 1988).

The statute of frauds, codified in Tenn. Code Ann. § 29-2-101(a) (2000), provides, in relevant part, that no action shall be brought,

---

[2]On April 26, 2003, during the pendency of these proceedings, it was discovered that the property had been vandalized and substantial damage was done to the home.  In its opinion rendered from the bench, the trial court held that the buyer bore the risk of loss during the relevant period of time.  The defendants do not address this ruling in their brief and, consequently, we will not address it on appeal.

[3]The plaintiff further raises equitable estoppel as an alternate mechanism by which the contract can be brought out of the statute of frauds.  She argues that failure to enforce this contract would result in hardship or oppression. *See* **Baliles v. Cities Serv. Co.**, 578 S.W.2d 621, 624 (Tenn. 1979).  Since we affirm the trial court's judgment on the basis of that court's rationale, we decline to address the applicability of the doctrine of equitable estoppel to the facts of this case.

(4) [u]pon any contract for the sale of lands, tenements, or hereditaments, or the making of any lease thereof for a longer term than one (1) year . . .

unless the promise or agreement, upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person lawfully authorized by such party.

The agreement before us is one for the sale of land. Therefore, it must satisfy the prescription of Tenn. Code Ann. § 29-2-101(a)(4) to be enforceable.

In Tennessee, the reference to a memorandum "signed by the party to be charged" has been construed, in the real estate context, to mean "the owner of the realty rather than the party attempted to be charged or held liable in an action based on the memorandum." **Bradley v. Pen Tax Corp.**, No. 89-416-II, 1990 WL 33404, at *2 (Tenn. Ct. App. M.S., filed March 28, 1990)(citations omitted). Apparently, Tennessee is in a small minority of states that place this interpretation on the statute. *See Ashley v. Preston*, 39 S.W.2d 279, 280 (Tenn. 1931). Tennessee courts have interpreted it this way because the statute "was adopted and enacted in Tennessee for the protection of the people, who owned the title to real estate." **Irwin v. Dawson**, 273 S.W.2d 6, 7 (Tenn. 1954).

In the instant case, the deed drafted by the plaintiff's attorney was signed by Ms. Caraway in her capacity as the agent of the party to be charged. The defendants concede that the holding in **Bradley** is the law. However, they argue that the rationale used to justify Tennessee's interpretation of this language does not apply to the facts of this case. It has been said that the rule is designed to "protect the owners of land from being drawn into hasty or inconsiderate agreements" and to guard "against misunderstanding as to the nature and extent of such agreements." **Whitby v. Whitby**, 36 Tenn. 473, 478 (Tenn. 1857). Since the rule serves to protect the owner when sued by the purchaser, so the argument goes, it has been used infrequently in the context of an owner seeking specific performance against a purchaser.

While we have acknowledged the paucity of cases wherein an owner seeks to enforce a contract against a purchaser, we have nonetheless affirmed the aforesaid principle of law. We have stated that

[i]t may be argued with considerable logic that it is grossly inconsistent to require the signature of the seller to validate a sale of real estate but to enforce the same agreement against the buyer who signed no written memorandum. No authority has been found wherein a buyer was forced to specifically perform or pay damages without his signature. All authorities examined involved an effort by the buyer to force the seller to specifically perform. Nevertheless, the Legislature has declared the policy of the State in words which the

-5-

> Supreme Court has held to mean that only the seller's signature is necessary for a valid contract to sell land. Any change in the law or its interpretation must come from the Legislature or the Supreme Court.

*Massey*, 753 S.W.2d at 137. In light of our precedent, we find that the deed has been signed by a lawfully authorized agent of the party to be charged and therefore satisfies this element of the statute.

The law provides that a contract signed only by the vendor may be enforced if it can be demonstrated that the purchaser orally assented to the agreement. *Bradley*, 1990 WL 33404, at *4. Therefore, we must determine whether the deed constitutes a written memorandum sufficient to satisfy the statute of frauds. The defendants contend that since the deed did not contain the terms of the oral contract and they never accepted the deed, it is unenforceable. Therefore, we must determine (1) the scope of the oral agreement between the parties, and (2) whether the undelivered deed contains the terms of that oral agreement. *See Black v. Black*, 202 S.W.2d 659, 661-63 (Tenn. 1947).

IV.

The defendants do not really dispute that there was an oral agreement to purchase the plaintiff's property at the foreclosure sale. Mr. Bacon and Ms. Caraway indicated to the defendants that they would need a bid of $77,642.05. The defendants subsequently bid this amount and Mr. Bacon declared the property sold to the defendants. Mr. Bacon subsequently stated that he would prepare the documents deeding the property to them, and agreed to give the defendants until the end of the month to pay the remaining balance. The closing was tentatively set for September 30, 2002.

The precise terms of that agreement, however, are in dispute. The defendants contend that the notation made by Mr. Brownson in the memo section of his earnest money check, in which he wrote the sale was "contingent on getting financial [sic]," was a term of the oral agreement. We find that it was not. Following the sale, the parties discussed the time frame for paying the balance due and for executing the deed. At trial, Mr. Brownson testified that he informed Ms. Caraway and Mr. Bacon that he was "working on financing and expected to have something completed by the end of the month." He also testified that when he made the notation on the check and handed it to Ms. Caraway, he asked, "Is this okay?" However, there is nothing in the record indicating that he directed her attention to the notation or attempted to discuss it with her. In rendering its judgment from the bench, the trial court found as follows:

> that notation on the check – First of all, it isn't very clear as to what exactly it means. So that's a problem there. The evidence that I've heard, I would find that that was not discussed and agreed by the parties. So there was no discussion and agreement about that, or, at least, no agreement, and very little, if any, discussion at all.

We find that the evidence does not preponderate against the trial court's finding that this so-called contingency was not a term of the oral contract. The defendants argue that the brevity of their conversation about financing merely suggests that they had not finalized the agreement to purchase the property. We disagree. Mr. Brownson testified at trial that he was working on obtaining financing and therefore needed a couple of weeks to secure the balance due on the purchase. The fact that financing may have been mentioned in this context does not suggest it was a term of the sale when there is no evidence that any discussion took place with respect to this "contingency." The defendants further charge that Ms. Caraway must have noticed the notation on the check when she stated it was "okay." Ms. Caraway testified, however, that she did not notice the notation.

As previously noted, the evidence does not preponderate against the trial court's finding with respect to the "contingency" argument.

V.

The general rule for whether a memorandum suffices to satisfy the statute of frauds requires that

> the memorandum . . . contain the essential terms of the contract, expressed with such certainty that they may be understood from the memorandum itself or some other writing to which it refers or with which it is connected, without resorting to parol evidence. A memorandum disclosing merely that a contract had been made, without showing what the contract is, is not sufficient to satisfy the requirement of the Statute of Frauds that there be a memorandum in writing of the contract.

*Lambert v. Home Fed. Sav. & Loan Ass'n.*, 481 S.W.2d 770, 773 (Tenn. 1972) (citations omitted). In the instant case, the fact that the deed was not delivered does not mean that it cannot satisfy the writing requirement of the statute of frauds. Our courts have consistently held that an undelivered deed will constitute a sufficient memorandum of the contract of sale "if the deed contains substantially the terms of a prior parol contract." *Black*, 202 S.W.2d at 662 (citation omitted). Therefore, the primary issue before us is whether the deed contains the terms of the oral agreement assented to by the defendants.

The defendants argue that the deed fails to satisfy the statute of frauds because it does not contain all the terms of the oral contract. In support of this argument, the defendants refer us to a litany of cases involving undelivered deeds that address the requirements of a memorandum used to memorialize an oral contract. The defendants proffer these cases to argue that the facts of the instant case fail to meet these requirements. In one such cited case, *Black v. Black*, the Supreme Court held that a deed signed by the owner but never delivered to the purchaser sufficed to satisfy the statute of frauds because the deed fully described the property, included the usual covenants of warranty, contained nearly a verbatim statement of the contract as testified to by the parties, and

contained the words "have bargained," thereby connoting a prior transaction. *Id.* at 663. In this case, however, the defendants argue that the deed did not contain all of the terms: it failed to indicate that it was being made pursuant to a prior oral agreement, and it failed to include an essential term of the contract, that is, that the agreement was contingent upon the defendants securing financing.

The deed, which was drafted by Mr. Bacon and signed by Ms. Caraway, reads, in relevant part, as follows:

> WHEREAS, default was made in the payment of the said indebtedness and the lawful owners and holders of the promissory note evidencing same having directed me as Substitute Trustee to advertise and sell said real estate in accordance with the terms and provisions of said Deed of Trust and I did sell at 10:00 a.m. at the front door of the Courthouse in Morristown, Hamblen County, Tennessee, and as advertised in the *Citizen Tribune*, a weekly publication in Hamblen County, Tennessee, the said property for cash, and in bar of the equity of redemption, waived in the above referenced deed of trust, when, ROLLIN C. BROWNSON and wife, MARY ANN BROWNSON, among others, became the bidder therefore and bid the sum of $77,642.05, which being the highest and best bid, same was struck off and sold to the said ROLLIN C. BROWNSON and wife, MARY ANN BROWNSON, as tenants by the entirety, their heirs and assigns, the hereinafter described real estate . . .

We find that the deed references the prior agreement by reciting what occurred at the foreclosure sale, the place at which the oral agreement was entered into. This is not, as the defendants argue, a case where the writing fails to reference the prior oral agreement. *See Eslick v. Friedman*, 235 S.W.2d 808, 813 (Tenn. 1951) (where the purported written memorandum was unambiguous and made no reference to the alleged prior oral contract, it failed to satisfy the statute of frauds). The need for some reference to a prior oral agreement stems from a concern that parties would otherwise draft instruments following negotiations when the parties had yet to agree on the terms of the sale. *See Black*, 202 S.W.2d at 662. Consequently, a memorandum that satisfies the statute of frauds must set forth the agreed-upon terms of the contract sought to be enforced. *See id.* The *Black* court cited the language of "have granted, bargained, sold and conveyed," as being indicative of a prior sale. *Id.* at 663. Although the deed before us does not contain this precise language, we find that the language employed to recite the proceedings at the foreclosure sale – in particular, the language stating that the property "was struck off and sold to the said ROLLIN C. BROWNSON and wife, MARY ANN BROWNSON" – suffices to demonstrate that this deed was created pursuant to the oral agreement entered into at the foreclosure sale.

The defendants also contend that the deed fails to reflect the terms of the agreement because it does not contain a reference to the "contingency." As previously discussed, however, the

-8-

contingency was not a term of the oral contract that was agreed upon by the parties. Excluding this *alleged* term, the remaining terms contained in the deed coincide with Mr. Brownson's testimony as to his understanding of the oral agreement. Mr. Brownson's testimony at trial evidences his belief that the purchase was contingent on financing, and the sale was conditional because the buyer had an option to re-advertise or go to the next bidder in the event that the defendants could not perform. However, he also stated that when he left the foreclosure sale, he understood that he had just purchased the subject property. The defendants accepted the terms of the agreement entered into at the foreclosure sale, and their subsequent decision not to follow through on the purchase was because they decided they were paying more than the property was worth. As the trial court noted,

> Mr. Brownson has testified, I think very honestly, and very frankly . . . the gist of the problem came when it was discovered that the property wouldn't appraise, or didn't appraise, or may not appraise, or be worth what it was first thought to be . . . He said he – I don't remember exactly how, but he realized that, quote, his bid was too high.

In light of the foregoing, we find that the material terms concerning the description of the property, the proceedings at the sale, and the amount owed were contained in the deed, and the defendants orally assented to those terms. Those facts take this case out of the bar of the statute of frauds.

VI.

The defendants also argue that the notation on the check constituted a counteroffer that was never accepted by the plaintiff. In support of this argument, the defendants cite ***Westfall v. Brentwood Serv. Group, Inc.***, No. E2000-01086-COA-R3-CV, 2000 WL 1721659, at *3 (Tenn. Ct. App. E.S., filed November 17, 2000), where an employee modified his contract prior to signing it, and the court held that the amended provision was not enforceable. Similarly, the defendants argue that the notation next to the signature on Mr. Brownson's check constitutes a counteroffer because instead of accepting the plaintiff's offer to purchase the property for $77,642.05, they countered with the provision that the sale be contingent upon the defendants obtaining financing. An offer or counteroffer can be withdrawn at any time prior to acceptance. ***Mason v. Capitol Records, Inc.***, No. 01A01-9807-CH-00389, 1999 WL 976614, at *5 (Tenn. Ct. App. M.S., filed October 28, 1999). Therefore, so the argument goes, since the plaintiff never accepted this provision of the contract, and the defendants withdrew their initial offer when they proposed to pay $55,000 instead, the contract is not enforceable.

The acceptance of an offer must be precisely in accord with the terms of that offer. ***Ray v. Thomas***, 232 S.W.2d 32, 35 (Tenn. 1950). "If an offeree assents to an offer, but only with conditions or with varied terms, there is no acceptance, but rather the expression constitutes a rejection of the original offer and initiation of a new offer." ***Westfall***, 2000 WL 1721659, at *5. We find, however, that the defendants' argument fails in light of our disposition of this case. There is no evidence that the defendants expressed this "counteroffer" to the plaintiff. There were no

conversations about financing, and merely making a notation on a check without discussing that notation with the other party does not suffice. The fact of the matter is that the defendants offered to purchase the property when they made their bid. That bid was accepted by the plaintiff's agent at the auction. This was the contract between the parties.

## VII.

The defendants contend that should we find they are liable on the oral contract for the sale of property, we should deny the plaintiff's request for specific performance. As an alternative remedy, the defendants argue that we should only award to the plaintiff the difference between the contract price – $77,6420.05 – and the fair market value of the property – $50,000 – which amount is $27,642.05.

Specific performance is not a remedy available as of right, but one within the discretion of the trial court. *Shuptrine v. Quinn*, 597 S.W.2d 728, 730 (Tenn. 1979). The trial court's judgment will not be disturbed on appeal absent an abuse of that discretion. *See id.* at 731. "Where damages are practicable, and would be adequate, the Court, as a rule, will not compel a specific performance, but will leave the plaintiff to his remedies at law, or will award damages." *Lane v. Associated Hous. Developers*, 767 S.W.2d 640, 642 (Tenn. Ct. App. 1988) (citation omitted). However, specific performance is appropriate in contracts involving the sale of real property where, more often than not, an award of damages will not suffice to compensate the injured party. *Hillard v. Franklin*, 41 S.W.3d 106, 111 (Tenn. Ct. App. 2000). For a court to award specific performance, the contract must be "clear, complete and definite in all its essential terms," it must "show beyond doubt that the minds of the parties actually met," and it must be "free from any suspicion of fraud or unfairness." *Id.* (citations omitted).

As discussed, we find that the deed contained the terms of the oral agreement as assented to by the parties. Therefore, we find that the trial court did not abuse its discretion. Accordingly, we affirm the trial court's award of specific performance to the plaintiff.

## VIII.

The trial court's grant of specific performance to the plaintiff is affirmed. This case is remanded to the trial court for enforcement of the trial court's judgment and for the collection of costs assessed below, all pursuant to applicable law. Costs on appeal are taxed to the appellants, Rollin C. Brownson and his wife, Mary Ann Brownson.

_____
CHARLES D. SUSANO, JR., JUDGE