## ELIASON ET AL. *v.* WILBORN ET AL.

No. 347. Argued April 28, 29, 1930.—Decided May 19, 1930.

*Mr. Matthias Concannon,* with whom *Mr. Franklin E. Vaughan* was on the brief, for appellants.

*Mr. Floyd E. Thompson,* with whom *Mr. Henry Jackson Darby* was on the brief, for appellees. *Messrs. J. Scott Matthews* and *Nathan W. MacChesney* also appeared for the appellees.

*Mr. J. Scott Matthews,* by special leave of Court, filed a brief as *amicus curiæ,* on behalf of Clayton F. Smith, Registrar of Titles of Cook County, Illinois.

MR. JUSTICE HOLMES delivered the opinion of the Court.

The appellants had been holders of a certificate of title under the Torrens Act of Illinois. As a result of negotiations they entrusted this certificate to one Napletone, who is alleged to have presented it together with a forged conveyance to himself to the Registrar and by those means to have obtained from the Registrar a new certificate of title in Napletone, on May 19, 1926. Napletone a few days later sold and conveyed to the Wilborns, appellees, whose good faith is not questioned. After the Wilborns had bought but before a new certificate was issued to them, they had notice of the appellants' claim and the appellants notified the Registrar of the forgery and demanded a cancellation of the deeds and certificates to Napletone and the Wilborns and the issue of a certificate to themselves. The Registrar refused and this petition is brought to compel him to do what the appellants demand. It was dismissed on demurrer by the Circuit Court of the State, and the judgment was affirmed by the Supreme Court. 335 Ill. 352. The Supreme Court construed the statutes as giving title to the Wilborns, who purchased in reliance upon the certificate held by Napletone. Whether we are bound to or not we accept that construction and its result. The petitioners appealed to this Court on the ground that the statute, construed as it was construed below, deprived the appellants of their property without due process of law contrary to the Constitution of the United States, by making the certificate of title issued by the Registrar upon a forged deed without notice to them conclusive against them.

The sections objected to are appended. They are as in the original Act of 1897, except § 40, amended by the laws 1925, p. 250.*

---

* Section 40:

" The registered owner of any estate or interest in land brought under this Act shall, except in cases of fraud to which he is a party,

The appellants seem to claim a constitutional right to buy land that has been brought under the Torrens Act free from the restrictions that that Act imposes. But they have no right of any kind to buy it unless the present owner assents, and if, as in this case, the owner from whom the appellants bought, offered and sold nothing except a Torrens title we do not perceive how they can complain that that is all that they got. Even if the restrictions were of a kind that was open to constitutional objection, the appellants bought knowing them and got what they paid

or of the person through whom he claims without valuable consideration paid in good faith, hold the same subject to the charges hereinabove set forth and also only to such estate, mortgages, liens, charges and interests as may be noted in the last certificate of title in the registrar's office and free from all others except:

(1) Any subsisting lease or agreement for a lease for a period not exceeding five years, where there is actual occupation of the land under the lease. The term lease shall include a verbal letting.

(2) General taxes for the calendar year in which the certificate of title is issued, and special taxes or assessments which have not been confirmed.

(3) Such right of appeal, writ of error, right to appear and contest the application, and action to make counterclaim as is allowed by this Act."

Section 42:

" Except in case of fraud, and except as herein otherwise provided, no person taking a transfer of registered land, or any estate or interest therein, or of any charge upon the same, from the registered owner shall be held to inquire into the circumstances under which or the consideration for which such owner or any previous registered owner was registered, or be affected with notice, actual or constructive, of any unregistered trust, lien, claim, demand or interest; and the knowledge that an unregistered trust, lien, claim, demand or interest is in existence shall not of itself be imputed as fraud."

Section 46:

" The bringing of land under this act shall imply an agreement which shall run with the land that the same shall be subject to the terms of the act and all amendments and alterations thereof. And all dealings with land or any estate or interest therein, after the same

for, and knew that they were liable to lose their title without having parted with it and without being heard. Even if they had been the original holders under the Torrens Act and had attempted to save their supposed rights by protest the answer would be that they were under no compulsion when they came into the system, that an elaborate plan was offered of which the provisions objected to were an important part, and that they could take it as it was or let it alone. There are plenty of cases in which a man may lose his title when he does not mean to. If he entrusts a check indorsed in blank to a servant or friend he takes his chance. So when he entrusts goods to a bailee under some factors' acts that are well known. So, more analogous to the present case, a man may be deprived of a title by one who has none; as when an owner who has conveyed his property by a deed not yet recorded executes a second deed to another person who takes and records the later deed without notice of the former. There are few constitutional rights that may not be waived.

---

has been brought under this act, and all liens, incumbrances and charges upon the same, subsequent to the first registration thereof, shall be deemed to be subject to the terms of this act."

Section 47:

"A registered owner of land desiring to transfer his whole estate or interest therein, or some distinct part or parcel thereof, or some undivided interest therein, or to grant out of his estate an estate for life or for a term of not less than ten years, may execute to the intended transferee a deed or instrument of conveyance in any form authorized by law for that purpose. And upon filing such deed or other instrument in the registrar's office and surrendering to the registrar the duplicate certificate of title, and upon its being made to appear to the registrar that the transferee [*sic*] has the title or interest proposed to be transferred and is entitled to make the conveyance, and that the transferee has the right to have such estate or interest transferred to him, he shall make out and register as hereinbefore provided a new certificate and also an owner's duplicate certifying the title to the estate or interest in the land desired to be conveyed

But there is a narrower ground on which the appellants must be denied their demand. The statute requires the production of the outstanding certificate, as a condition to the issue of a new one. The appellants saw fit to entrust it to Napletone and they took the risk. They say that according to the construction of the act adopted the Registrar's certificate would have had the same effect even if the old certificate had not been produced. But that, if correct, is no answer. Presumably the Registrar will do his duty, and if he does he will require the old certificate to be handed in. It does not justify the omission of a precaution that probably would be sufficient, to point out that a dishonest official could get around it. There is not the slightest reason to suppose that Napletone

to be in the transferee, and shall note upon the original and duplicate certificate the date of the transfer, the name of the transferee and the volume and *folium* in which the new certificate is registered, and shall stamp across the original and surrendered duplicate certificate the word ' canceled.' "

Section 54:

"A deed, mortgage, lease or other instrument purporting to convey, transfer, mortgage, lease, charge or otherwise deal with registered land, or any estate or interest therein, or charge upon the same, other than a will or a lease not exceeding five years where the land is in actual possession of the lessee or his assigns, shall take effect only by way of contract between the parties thereto, and as authority to the registrar to register the transfer, mortgage, lease, charge or other dealing upon compliance with the terms of this act. On the completion of such registration, the land, estate, interest or charge shall become transferred, mortgaged, leased, charged or dealt with according to the purport and ·terms of the deed, mortgage, lease or other instrument."

Section ·58, (omitting immaterial parts):

" In the event of a duplicate certificate of title being lost, mislaid or destroyed, the owner . . . may make affidavit . . . and the registrar, if satisfied as to the truth of such affidavit and the *bona fides* of the transaction, shall issue to the owner a certified copy of the original certificate . . . and such certified copy shall stand in the place of and have like effect as the missing duplicate certificate."

would have got a certificate on which the Wilborns could rely without the delivery of the old one by the appellants. As between two innocent persons one of whom must suffer the consequence of a breach of trust the one who made it possible by his act of confidence must bear the loss.

*Decree affirmed.*