**TEXAS BANK AND TRUST IN WICHITA FALLS, Texas, Appellant,**

v.

**Jack F. HELMCAMP, Individually and Co-Trustee of the Burford Helmcamp Trust and as next friend for Kim Helmcamp et al., Appellees.**

**No. 17479.**

Court of Civil Appeals of Texas, Fort Worth.

March 1, 1974.

Bailey, Williams, Westfall & Henderson, and C. Edward Fowler, Jr., Dallas, for appellant.

Nelson, Montgomery & Robertson, Wichita Falls, for appellees.

OPINION

LANGDON, Justice.

Jack F. Helmcamp and W. E. (Bill) Burford were co-trustees of funds held in a joint checking account at Texas Bank & Trust in Wichita Falls, Texas. Helmcamp sued the Bank for Burford's wrongful use of the joint account funds. An agreed statement of facts was filed and the Bank moved for a summary judgment. The motion for summary judgment was overruled and judgment was rendered for plaintiff from which the Bank has appealed.

On appeal the appellant contends that the trial court erred (1) in assessing plaintiff's alleged loss against defendant because W. E. (Bill) Burford, not defendant, caused such loss; (2) in rendering judgment for plaintiff because neither Burford's acts nor

his knowledge of his wrongful use of the joint checking account funds is imputed to the Bank; (3) in failing to grant defendant's motion for summary judgment; (4) that there is no basis in law under the agreed statement of facts to render judgment for plaintiff; (5) that the statement in the trial court's judgment to the effect that W. E. (Bill) Burford issued a debit memorandum against the account of Burford-Helmcamp Trust is an incorrect statement of fact because the agreed statement of facts shows the entry was made by "LP" not W. E. (Bill) Burford; and (6) that the trial court's conclusion that because the Bank failed to deposit the entire amount of a check from Scheinman, Hochstein and Trotta to the Burford-Helmcamp Trust, the Bank is liable to the plaintiff for the balance of the check is an improper application of the controlling law under the stipulated facts. Exhibit No. 9 to the Agreed Statement of Facts shows that the bank was only authorized to deposit $4,657.05 of the check proceeds. The Bank had no right of control over the remaining proceeds of the check and W. E. (Bill) Burford as co-trustee was authorized to take the funds.

We reverse and render.

A summary of the facts contained in the Agreed Statement of Facts is set forth in the paragraphs next following:

"At all times pertinent to this litigation William E. Burford and Jack F. Helmcamp had an oral agreement to acquire securities for the benefit of their children, . . . . Under this agreement Mr. Burford and Mr. Helmcamp were to borrow funds at the City National Bank of Wichita Falls, Texas, for the purpose of investing in various securities. . . . Mr. Burford was to handle all buying and selling of the securities, but Mr. Helmcamp could advise as to what securities he felt should be acquired, and the two men did from time to time discuss what securities to buy and sell.

". . .

"In late December of 1964 a checking account was opened at Texas Bank and Trust Company in Wichita Falls with an initial deposit being a dividend check and the signature either of Mr. Burford or Mr. Helmcamp was sufficient to withdraw funds from the account or otherwise control the account.

"At all times pertinent to this litigation Texas Bank and Trust in Wichita Falls did not have trust powers, and William E. Burford was acting individually in any trust capacity which appeared. Mr. Helmcamp and Mr. Burford did not expect Texas Bank and Trust in Wichita Falls to exercise control over Mr. Burford as to how he handled the agreement existing between him and Mr. Helmcamp. At no time were any documents or other writings transmitted either to City National Bank or Texas Bank and Trust in Wichita Falls setting out the terms of the oral agreement between the two individuals.

"At all times pertinent to this litigation Mr. Burford and Mr. Helmcamp did carry out their agreement by buying and selling certain securities and during said period, Mr. Burford was president of Texas Bank and Trust in Wichita Falls, and Mr. Helmcamp was a director of Texas Bank and Trust in Wichita Falls."

It is apparent that Burford abused his position as trustee by using some of the joint checking account funds for his personal gain. The agreed statement of facts reflects that, "On or about May 13, 1965, a debit memorandum in the amount of $5,-633.00 was charged to the account of Helmcamp and Burford. . . . the joint checking account opened in January of 1965, . . . the debit memorandum . . . covered a draft from Eppler, Guern, and Turner, Inc., to cover purchases of securities by William E. Burford for his own use and benefit. In connection with this transaction a credit memorandum was issued to the William E. Burford Investment account in the amount of $5,633.00 to cover the aforementioned draft, . . . (Exhibit No. 7). All of these transactions took place after the joint checking account mentioned

above was opened in Texas Bank and Trust in Wichita Falls.

"On or about March 3, 1966, a check payable to Burford and Helmcamp Trust in the amount of $11,157.05 from Scheinman, Hochstin and Trotta, Incorporated, was received by William E. Burford and of that amount $4,657.05 was deposited to the Burford-Helmcamp account. . . . The remaining $6,500.00 was not credited to nor used for the benefit of William E. Burford and Jack F. Helmcamp under their agreement. All of these transactions took place after the joint checking account referred to above was opened."

In the case of Wichita Royalty Co. v. City Nat. Bank of Wichita Falls, 127 Tex. 158, 89 S.W.2d 394, 400 (1935) the Texas Supreme Court held that a bank is liable for a trustee's wrongful acts concerning a trust account only " '. . . if the bank has notice or knowledge that a breach of the trust is being committed by an improper withdrawal of funds, or if it participates in the profits or fruits of the fraud, . . . .' " This rule of law was reaffirmed by the Supreme Court in Quanah, A. & P. Ry. Co. v. Wichita State Bank & Trust Co., 127 Tex. 407, 93 S.W.2d 701, 705 (1936).

The Bank did not, "participate in the profits or fruits of the fraud," and no one at the Bank besides Burford knew there was an oral agreement between Burford and Helmcamp or had knowledge that Burford used any of the monies contrary to the agreement.

Helmcamp contends that the Bank is liable because Burford's knowledge of his improper use of the funds as co-trustee should be imputed to the Bank as Burford was its president and a member of the Board of Directors.

This is not a viable complaint because notice to an officer of a bank received outside the scope of his duties as a bank officer is not imputed to the bank. Amarillo Nat. Bank v. Harrell, 159 S.W. 858 (Amarillo, Tex.Civ.App., 1913, error ref.); Guaranty State Bank v. Bland, 189 S.W. 546 (Beaumont, Tex.Civ.App., 1916, no writ hist.); O'Brien v. First State Bank & Trust Co., 241 S.W. 556 (San Antonio, Tex.Civ.App., 1922, error dism.).

Helmcamp stipulated that Burford was acting in his individual capacity in handling the trust funds. It is therefore obvious that Burford did not represent the Bank as co-trustee on the account. He represented himself and Helmcamp. The scope of a bank president's duty does not include his capacity as co-trustee of an account to furnish funds for the education, maintenance and support of his children and the children of a co-trustee. It was in his individual capacity as trustee that Burford obtained possession of and misused the joint checking account funds, and neither his wrongful acts nor his knowledge of them can be imputed to the Bank.

An agent must first act in the course and scope of his employment before his knowledge can be imputed to his principal. Under the record in this case Burford was not acting in the course and scope of his employment as Bank president. He was acting in his private and individual capacity as trustee of a fund. Burford's knowledge can not be imputed to the Bank under the facts in this case.

In Guaranty State Bank v. Bland, supra, 189 S.W. 546, 550 (Beaumont, Tex.Civ. App., 1916, no writ hist.) the court said: "As we understand the law, a principal is not taxed with notice of facts known to his or its agent or officer when acting in his individual capacity in matters for himself or other concerns, and in which the principal, whether person or concern, has no interest. Mr. Stark testified that he never talked with any official of the Guaranty State Bank except Mr. Butts, nor is there any evidence in the record showing that any of the bank officials other than Butts knew anything about the transactions which were taking place between Stark, Waller, Butts, et al., as to the Pan-American Trust Company, . . . ."

Amarillo Nat. Bank v. Harrell, supra, contains the following language: "In this case Stringfellow acquired the knowledge of the manner in which the account should be kept when he entered into an agreement with Harrell forming the partnership. This knowledge was not obtained in the business of the bank, but in his private, independent enterprise. This knowledge he did not impart to the directors, or to any other officer of the bank. On the contrary, . . . . The knowledge as to how the partnership account should be kept was not learned by Stringfellow while within the apparent scope of his duties as president of the bank."

In O'Brien v. First State Bank & Trust Co., supra, the court held, "An officer of a bank may properly transact his private business at such bank. He may discount third persons' notes at such bank, even. But in so transacting his private business his interest is adverse to that of the bank, and the moment the conflict arises he automatically ceases to represent the bank, and assumes his status as an individual. So, if Eckhardt in the pursuit of his private purposes obtained Mrs. Henderson's notes through false representations, or by collateral promises or agreements, passed them into the bank for value, and converted the proceeds, he did so as an individual, and, although he was president of that institution, the bank was not charged with notice of those vices in the paper by reason of his knowledge."

Burford's knowledge of his rights and obligations under his oral agreement with Helmcamp was acquired while acting in his individual capacity as trustee. This knowledge was not imparted to any other officer or representative of the Bank. No one at the Bank besides Burford knew the draft to Eppler, Guerin & Turner covered purchases of securities for Burford's own use.

Exhibit No. 7 is not a credit memorandum to the Burford investment account. On its face it purports to be a credit to the account of the National Bank of Commerce in Dallas, apparently drawn on funds from the Burford investment account. It is undisputed that no one at the Bank was aware that Burford committed a wrongful act in this transaction.

Burford was authorized to draft on the joint checking account and the Bank properly honored the draft to Eppler, Guerin & Turner. The judgment erroneously recites that Burford issued the debit memo against the joint checking account, because the memorandum itself indicates that the entry was made by "LP" not W. E. (Bill) Burford. This point is not covered by the agreed statement. As to the Scheinman, Hochstein and Trotta matter, the Bank deposited $4,657.05 to the Burford and Helmcamp account per the deposit slip (Exhibit 9). Helmcamp had authorized Burford to receive the balance of the money from the check, and there is no hint that anyone at the Bank knew the remaining $6,500.00 was not used for the benefit of Burford and Helmcamp under their agreement.

Knowledge that trust funds were in Burford's personal account or possession would not render the Bank liable. It was entitled to believe that Mr. Burford would use the trust funds for proper purposes. United States F. & G. Co. v. Texas B. & T. Co. of Dallas, 380 S.W.2d 900, 903 (Dallas, Tex. Civ.App., 1964, writ ref., n. r. e.), is pertinent on this point as are the authorities there cited which include 4 Bogert on Trusts and Trustees, § 908, p. 2632; American Law Institute, Restatement of the Law of Trusts, § 324d, pp. 966, 967.

If Helmcamp is innocent so is the Bank, and as between two innocent persons, one making a loss possible by an act of confidence in another must suffer. Eliason v. Wilborn, 281 U.S. 457, 50 S.Ct. 382, 74 L. Ed. 962 (1930).

Helmcamp invested Burford with full authority to use the funds in their joint account. "Under the agreement . . . Mr. Burford was authorized to handle the objects of the oral agreement as he saw fit and according to his own judgment act-

ing as manager of the activities of Mr. Burford and Mr. Helmcamp . . . without any specific restrictions."

Helmcamp's grant of unlimited authority to Burford and not his position as president of the Bank invested Burford with unbridled authority to possess and use the joint account funds at will.

The judgment of the trial court is reversed and judgment is here rendered that plaintiff take nothing. All costs of court on this appeal and in the trial court are taxed against the plaintiff (appellee).