EDWARD D. LORD, INC., A NEW JERSEY CORPORATION, PLAINTIFF, v. MUNICIPAL UTILITIES AUTHORITY OF THE TOWNSHIP OF LOWER CAPE MAY COUNTY, STATE OF NEW JERSEY, DEFENDANT.

Superior Court of New Jersey
Law Division

Decided April 2, 1974.

*Mr. Lee M. Hymerling* for plaintiff. (*Archer, Greiner and Read,* Esquires).

*Mr. William M. Balliette, Jr.,* for defendant Municipal Utilities Authority of Lower Cape May Township (*Cafiero and Balliette,* attorneys).

*Mr. Lawrence E. Stanley,* Deputy Attorney General, for defendant State of New Jersey (*Mr. William F. Hyland,* Attorney General of New Jersey, attorney).

GRUCCIO, J. S. C. Edward D. Lord, Inc. (Lord) instituted this suit in contract against the Municipal Utilities Authority of the Township of Lower Cape May (M.U.A.) to recover the outstanding balance allegedly due from a contract for the construction of a sewerage treatment plant. Defendant has counterclaimed against plaintiff for the difference between the amount of a collusive subcontract and the real cost to plaintiff to obtain the electrical work. The State of New Jersey has intervened on behalf of defendant since state funds were used to finance the construction of the sewerage facilities. The United States Government has agreed to be bound by the decision of this court, since federal funds are involved. The litigants have stipulated to the material facts and to the amount of damages so that the issue of liability will be decided by this court sitting without a jury.

M.U.A. was created in 1965 for the purpose of managing the installation of a sanitary sewerage system for Lower Cape May County. M.U.A., after conducting feasibility studies, applying for state and federal grants and engaging the firm of Van Note-Harvey Associates as consulting engineers, authorized bidding by the lump sum procedure in order to select the general contractor for the construction of the sewerage treatment plant. Of the two bids submitted, M.U.A. accepted the lower bid tendered by plaintiff Lord. Lord was awarded the contract for the sewerage treatment project on July 7, 1969.

This controversy arose out of the fraudulent conduct of two electrical subcontractors, Audubon Electric and Martin Electric Company. Prior to the awarding of the contract the two bidding general contractors, Lord and Edward Ellis, Inc., had requested and received quotations on the electrical work from the two electrical subcontractors. Both of the general contractors incorporated these quotations in order to arrive at their final lump sum bid. However, unbeknownst to the general contractors, the electrical subcontractors had covertly agreed to set their quotations well in excess of the actual cost plus a reasonable profit. In addition, they agreed to cross their bids to the general contractors so that the fraudulent quotations would be reflected in the lump sum bids of both general contractors.

Subsequently, Lord awarded the electrical subcontract to Audubon Electric. However, before Audubon commenced any of the electrical work Lord discovered the covert agreement between Audubon and Martin. Lord immediately notified M.U.A. and cancelled the subcontract with Audubon. Lord requested new bids, and R. C. Smith of Woodbury, New Jersey, was awarded the electrical subcontract at a price which amounted to a $113,416 reduction from Audubon's fraudulent bid.

All work under the contract between Lord and M.U.A. has been completed and the M.U.A. has paid Lord the full contract price less the $113,416. Lord claims that this balance

is owing under the original contract and asserts that any fraudulent conduct by its subcontractors does not affect the enforceability of the contract price based upon a lump sum bid.

Lord's position is based upon the inherent risks and uncertainty of lump sum bidding. Basically, such a bid is wager because of the various unpredictable contingencies which the general contractor must weigh against the priority of submitting the lowest bid in order to obtain the contract at a reasonable profit. Plaintiff also asserts that the subcontractors' fraudulent quotations were not binding bids but merely an informal estimate which is used by the general contractor in arriving at its own bid. Defendant M.U.A. and the State of New Jersey, Department of Environmental Protection, maintain that the $113,416 is essentially a windfall profit which was not a part of the bargain but which occurred because of this fraudulent activity. Therefore, it is asserted that this portion of the contract should not be enforced because it violates public policy. Plaintiff is entitled to compensation for the work performed, along with a reasonable profit, but Lord should not benefit from the fraud of its subcontractors.

The litigants have also stipulated to the amount of damages. In the event that Lord prevails, plaintiff's recovery would be in the amount of $112,120.52, which represents the principal claim. If M.U.A. prevails, a judgment of $1,296 would be entered against plaintiff Lord, that amount representing an overpayment made by M.U.A. to plaintiff. In addition, the prevailing party will be responsible for any amount determined to be due Audubon in an action now pending before the bankruptcy court.

From the evidence present it is apparent that Lord and M.U.A. were both innocent of any malfeasance or knowledge of the fraud committed by the electrical subcontractors. Lord's conduct, evidenced by its discovery and immediate disclosure to all pertinent parties, exemplified the highest form of business integrity. Conversely, there is no indication

of any negligent or improper conduct on the part of M.U.A. Therefore, the issue before this court is who between these two innocent parties should suffer a loss perpetrated by the fraud of the electrical subcontractors.

This unique factual situation presents this court with a novel and perplexing controversy on which there are no legal precedents in New Jersey. It is this court's opinion, and the parties have orally stipulated on the record, that the fraudulent nature of this case requires the utilization of fundamental equitable principles in order to resolve this controversy.

In an action by the mortgagee against the mortgagor for payments which the mortgagor made to the mortgagee's agent, who then fraudulently retained the payments, the court held that between two innocent parties, the loss should be sustained by the one who first rendered the injury possible. Therefore, the mortgagee was held to be accountable for the payments stolen by his agent. *Zabriskie v. Mack*, 132 *N. J. Eq.* 516 (Ch. 1942). And in an action by the mortgagee's assignee against the mortgagor for foreclosure, the court stated that between two innocent parties, the loss should be sustained by the one whose conduct has made the fraud possible. Judgment was entered against defendant mortgagor who had innocently made the payments to the original mortgagee. *Schultz v. Partrick*, 110 *N. J. Eq.* 295 (Ch. 1932).

In cases dealing with fraudulent transfer of property, it has been generally held that where the real owner has placed the wrongdoer in the position where he could obtain the title necessary to perpetrate a fraud, he should suffer the loss. *Elison v. Wilburn*, 281 *U. S.* 457, 50 S. Ct. 382, 74 L. Ed. 962 (1932); *Motor Credit Corp. v. Woolverton*, 99 *So.* 2d 286 (Fla. Sup. Ct. 1957). Similarly, in situations where the complainants gave their agents opportunity to transfer property to innocent third parties, the court held against the principals responsible for placing the wrongdoer in a position of confidence and thereby making the loss pos-

sible. *Stone v. Limouze,* 111 *N. J. Eq.* 421 (E. & A. 1932) ; *Parkview B. & L. Ass'n of Newark v. Rose,* 90 *N. J. L.* 614 (E. & A. 1917).

Furthermore, in an action by an owner against a purchaser who purchased the real estate from a third party who had obtained the deed and recorded it pursuant to an agreement with plaintiff-owner, the court held for the defendant and ruled that the plaintiff was estopped from claiming title against the defendant. *Moore v. Riddle,* 82 *N. J. Eq.* 197 (Ch. 1913).

From the above decisions certain equitable maxims are exhibited which provide some assistance in resolving the issue raised by the case at bar. Therefore, between two innocent parties to a fraud, the loss should be borne by the party whose conduct made the fraud possible. *Parkview B. & L. Ass'n of Newark v. Rose, supra; Hofstetter v. Bernett,* 118 *N. J. Eq.* 143 (Ch. 1935) ; *Schultz v. Partrick, supra; Lawson v. Carson,* 50 *N. J. Eq.* 370 (Ch. 1892). In addition, it has been held that between two innocent parties to a fraud, the loss should be imposed upon the party whose act first could have prevented the fraud. *Cambridge Acceptance Corp. v. American National Motors Inns, Inc.,* 96 *N. J. Super.* 183 (Ch. Div. 1967), aff'd 102 *N. J. Super.* 435 (App. Div. 1967.)

This fraud was perpetrated by two subcontractors. These wrongdoers were selected twice by plaintiff, first to submit quotations for its lump sum bid and later to bid for the electrical subcontract itself. Defendant M.U.A. had nothing to do with Lord's selection, and since the quotations were not binding bids there appears to be no reason why Lord could not have selected some other electrical subcontractor for this project.

Plaintiff was in a more advantageous position to detect and thereby prevent the collusive bids. This is evident when the size of the total contract, over two million dollars, is

compared to the relatively small electrical subcontract between Lord and Audubon. Furthermore, Lord, who is an experienced general contractor, possessed a greater and more comprehensive knowledge of not only the construction trade but also of the prices and practices particular to Cape May. M.U.A., even with the benefit of the engineering consultants, would not possess the expertise required to detect the collusive bids. Clearly, if anyone should have made the discovery, it was the plaintiff, Lord, and not M.U.A.

Lord alleges that a judgment in M.U.A.'s favor would unjustly enrich defendants and place upon Lord the burden of the entire loss. However, it would be erroneous to state that a windfall has fallen to M.U.A., for it has only received what it has paid for, *i. e.*, construction of a sewerage treatment plant. Likewise, Lord does not really suffer a loss, for in addition to its profit it has been adequately compensated for the services rendered to M.U.A.

 Of paramount importance in this case is the fact that the public will be directly affected by the decision of the court. All of the monies which will go into this public project are either local, state or federal monies. The purpose of the bidding statutes is to protect the public interest. The entire procedure is designed to obtain the highest possible quality of work for the lowest possible cost. The avowed objects of bidding statutes are a protecting of public interest and yet fairly and adequately compensating private concerns for the work and services rendered to the utility. This purpose in the instant case can only be accomplished by a just payment equitably arrived at for work performed. The true intent of both of the parties is accomplished by denying Lord the relief he seeks. To do otherwise would in fact improperly, illogically and unjustly enrich him. No one, not even an innocent party, should be unjustly enriched, at the public expense, by fraudulent action.

It is, therefore, this court's decision that plaintiff Lord should not receive a windfall which was caused by fraudulent third parties. In accordance with the stipulation of the liti-

gants as to the amount of damages, judgment will be entered in favor of defendant M.U.A. in the amount of $1,296. The parties are also instructed to comply with the other provisions of their stipulation.